1
2
3
4
5
6

DARIEN K. WALLACE (State Bar No. 139798)
  *darien@imperiumpw.com*
T. LESTER WALLACE (State Bar No. 159967)
  *lester@imperiumpw.com*
**IMPERIUM PATENT WORKS LLP**
315 Ray Street
Pleasanton, California 94566
Telephone:925-550-5067
Facsimile: 925-835-5804

7
8

Attorneys for Defendant/Counterclaimant/
Third-Party Claimant
ZINUS, INC.

9
10

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

11
12
13
14
15

CAP EXPORT, LLC, a California
Limited Liability Company,
                              Plaintiff,
              v.

ZINUS, INC., a California corporation;
and DOES 1 through 10, inclusive,
                              Defendants.

Case No. 2:16-cv-00371 SVW (MRWx)

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ZINUS, INC.'s MOTION FOR RECONSIDERATION OR IN THE ALTERNATIVE CERTIFICATION UNDER 28 U.S.C. § 1292(b) FOR INTERLOCUTORY APPEAL**

16
17
18
19
20

ZINUS, INC., a California corporation,

              Counterclaimant,
              v.
CAP EXPORT, LLC, a California
Limited Liability Company,

              Counterdefendant.

21
22
23

ZINUS, INC., a California corporation,

              Third-Party Claimant,
              v.

Hearing on Motion
Date: July 6, 2019 at 1:30 p.m.
Dept: Courtroom 10A, 10th Floor
Judge: Hon. Stephen V. Wilson

24
25
26

ABRAHAM AMOUYAL, an
individual; and 4MODA CORP.,
a California corporation.

              Third-Party Defendants.

27
28

MEMO IN SUPPORT OF ZINUS'
MOTION FOR RECONSIDER-
ATION OR CERTIFICATION FOR
INTERLOCUTORY APPEAL

2:16-cv-00371 SVW (MRWx)

# TABLE OF CONTENTS

**Page(s)**

I.   INTRODUCTION ................................................................ 1

II.  LEGAL STANDARDS .......................................................... 1

   A. Legal Basis For A Motion For Reconsideration .................... 1

   B. Legal Standard For Reviewing Rule 60(b)(3) Orders ............. 2

III. LEGAL ARGUMENT .......................................................... 4

   A. The Order To Set Aside Should Be Rescinded Because It Relies On
      An Erroneous Conclusion Of Law Relating To Diligent Discovery ........ 4

      i.  The Order Relies On The Erroneous Conclusion Of Law That
          Rule 60(b)(3) Relief Is Available Where The Alleged
          Misrepresentations Would Have Been Discoverable ......................... 4

      ii. The Order Relies On The Erroneous Conclusion Of Law That
          Rule 60(b)(3) Relief Is Available Despite A Lack Of Due
          Diligence In Uncovering Misrepresentations ...................................... 9

   B. The Order Relies On The Finding of Fact "There Is No Evidence That
      Zinus Had Any Prior Art Or Knowledge Of The Woody Purchases"....... 11

   C. The Finding of Fact "There Is No Evidence That Zinus Had Any Prior
      Art Or Knowledge Of The Woody Purchases" Is Clearly Erroneous ...... 11

   D. The Finding of Fact "Lawrie's Misrepresentations Prevented
      Cap Export From Fully And Fairly Presenting Its Defense" Is
      Clearly Erroneous .................................................................. 16

   E. The Finding of Fact "Counsel for Cap Export Cautioned Lawrie
      Against Exchanging Notes With His Attorney" Is Clearly Erroneous .... 17

   F. The Court's Finding of What Constitutes "Due Diligence" Was Made
      Without Any Evidentiary Basis ................................................. 19

      i.  Judge Rader Submits Evidence For The Court's Consideration ......... 20

      ii. An Experienced Patent Litigator Submits Evidence For The
          Court's Consideration ........................................................... 22

IV.  ZINUS' MOTION TO CERTIFY THE ORDER FOR
     INTERLOCUTORY APPEAL ................................................. 23

V.   CONCLUSION .................................................................. 25

# TABLE OF AUTHORITIES

**Cases**                                                                                      **Page(s)**

*Abatti v. Commissioner*, 859 F.2d 115 (9th Cir.1988) .......................................... 3

*Anderson v. City of Bessemer City*, 470 U.S. 564 (1985) ...................................... 3

*Appling v. State Farm Mut. Auto. Ins. Co.*, 340 F.3d 769 (9th Cir. 2003) ........... 6

*Biovail Corp. v. Andrx Pharmaceuticals*, 239 F.3d 1297 (Fed. Cir. 2001) ........... 3

*Bunch v. United States*, 680 F.2d 1271 (9th Cir.1982) ......................................... 2

*Broyhill Furniture Industries, Inc. v. Craftmaster Furniture Corp.*, 12 F.3d
    1080 (Fed. Cir. 1993) ................................................................ 5

*Casey v. Albertson's Inc.*, 362 F.3d 1254 (9th Cir. 2004) .............................. 4, 6, 11

*City of Law Angeles v. Santa Monica Baykeeper*, 254 F.3d 882 (9th Cir. 2001) ... 2

*Couch v. Telescope Inc.*, 611 F.3d 629 (9th Cir. 2010) .......................................... 23

*Credit Suisse First Bos. Corp. v. Grunwald*, 400 F. 3d 1119 (9th Cir. 2005) ........ 2

*Fiskars, Inc. v. Hunt Mfg. Co.*, 279 F.3d 1378 (Fed. Cir. 2002) ........................... 3

*Fortyune v. City of Lomita*, 766 F.3d 1098 (9th Cir. 2014) .................................. 24

*Fraige v. American-Natl. Watermattress Corp.*, 996 F.2d 295 (Fed. Cir. 1993) ... 2

*Heat & Control, Inc. v. Hester Indus. Inc.*, 785 F.2d 1017 (Fed.Cir.1986) ........... 3

*Helman v. Alcoa Global Fasteners, Inc.*, 2009 U.S. Dist. LEXIS 64720 (C.D.
    Cal. June 16, 2009), aff'd, 673 F.3d 986 (9th Cir. 2011) ........................... 23

*Hunt v. National Broadcasting Co.*, 872 F.2d 289 (9th Cir.1989) ........................ 3

*In re Cement Antitrust Litig.*, 673 F.2d 1020 (9th Cir. 1982) .............................. 23

*In re Intermagnetics America, Inc.*, 926 F.2d 912 (9th Cir. 1991) ....................... 6

*In re Levander*, 180 F.3d 1114 (9th Cir. 1999) ..................................................... 6

*In re M/V Peacock on Complaint of Edwards*, 809 F.2d 1403 (9th Cir. 1987) ....... 24

*Insite Vision, Inc. v. Sandoz, Inc.*, 783 F.3d 853 (Fed. Cir. 2015) ......................... 3

*linkLine Communications, Inc. v. SBC Calif., Inc.*, No. 2:03CV05265-SVW
    (C.D. Cal. Apr. 1, 2005) ............................................................... 23

*MGM Studios Inc. v. Grokster, Ltd.*, No. 2:01CV08541-SVW (C.D. Cal.

June 18, 2003) ............................................................... 23

*Pac. & Arctic Ry. and Navigation Co. v. United Transp. Union*, 952 F.2d
1144 (9th Cir. 1991) .................................................... 4

*Pfizer, Inc. v. Ranbaxy Labs. Ltd.*, 457 F.3d 1284 (Fed. Cir. 2006) ...................... 3

*Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681 (9th Cir. 2011) ................. 24

*Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35 (1995) ....................................... 23

*Tanner Motor Livery, Ltd. v. Avis, Inc.*, 316 F.2d 804 (9th Cir. 1963) .................. 2

*United States v. Int'l Fid. Ins. Co.*, No. CV 16-8064-DSF-(AGRx), 2019 WL
6971381 (C.D. Cal. Apr. 02, 2019) ........................................... 10

**Statutes and Rules**

28 U.S.C. §1292(b) ...................................................... 23, 25

35 U.S.C. §102 ............................................................ 16, 20

35 U.S.C. §282 ............................................................ 21

Fed.R.Civ.P. 54(b) ....................................................... 2

Fed.R.Civ.P. 60(b)(3) ............................... 2, 4-6, 8-11, 19, 21, 23-25

Local Rule 7-18 .......................................................... 2

## I.     INTRODUCTION

Zinus, Inc. ("Zinus") hereby moves the Court to reconsider the Court's May 11, 2020 "Order Granting Cap Export's Motion To Set Aside Judgment Pursuant To Fed. R.Civ.P. 60(b)(3)" (Dkt. 295) ("the Order").  The Order, which sets aside the final judgment (Dkt. 243), should be rescinded because it is based on erroneous conclusions of law and clearly erroneous and demonstrably false findings of fact and fails to consider material facts presented to the Court.

The Order reopens the litigation for further discovery, for the filing of additional summary judgment motions, and for trial.  Cap Export has recently filed a motion for leave to amend its complaint to assert new causes of action and to add additional defendants. (Dkt. 298)  Zinus believes that were the Order (Dkt. 295) to be considered by the Court of Appeals for the Federal Circuit, the Order would be vacated.  From a perspective of judicial economy, it makes no sense to go forward and conduct protracted and expensive litigation and a trial, potentially involving new causes of action and new defendants, only later to have the entire effort rendered a waste of time and money when the Federal Circuit vacates a third "final" judgment years from now.  (The Federal Circuit vacated the first final judgment (Dkt. 70).)  Rather than spending tremendous amounts of money on legal process and a trial and then later determining that the second final judgment (Dkt. 243) should never have been set aside, it would be preferable either to have the Order be voluntarily rescinded or to have the Federal Circuit consider and vacate the erroneous Order now before further substantial legal process is embarked upon.  For the sake of judicial economy, Zinus respectfully hereby moves this Court for reconsideration and rescission of the erroneous Order, or in the alternative to certify the Order for appeal under 28 U.S.C. § 1292(b).

## II.     LEGAL STANDARDS

### A.  Legal Basis For A Motion for Reconsideration

The Order should be rescinded pursuant to Fed.R.Civ.P. 54(b) based on the

Court's "inherent procedural power" to reconsider and modify an interlocutory order that it has made. *City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 885 (9th Cir. 2001) (A district court "possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient."). In the words of the Court of Appeals for the Ninth Circuit:

> "Federal Rule of Civil Procedure 54(b) states that a district court can modify an interlocutory order 'at any time' before entry of a final judgment, and we have long recognized 'the well-established rule that a district judge always has the power to modify or to overturn an interlocutory order or decision while it remains interlocutory'." (*Credit Suisse First Bos. Corp. v. Grunwald*, 400 F. 3d 1119 (9th Cir. 2005)) (quoting *Tanner Motor Livery, Ltd. v. Avis, Inc.*, 316 F.2d 804, 809 (9th Cir. 1963)).

Based on Fed.R.Civ.P. 54(b), Zinus respectfully requests the Court to use its "inherent authority to reconsider interlocutory rulings at any time prior to final judgment" to reconsider and to rescind the Order.

In addition, this motion for reconsideration is brought under Local Rule 7-18(c) because the Order shows a failure to consider material facts presented to the Court before the decision. The Court made a clearly erroneous finding of fact as a result of a manifest failure to consider facts presented to the Court before the decision.

**B. Legal Standard For Reviewing Rule 60(b)(3) Orders**

The Court should use its inherent power to reconsider the Order so that the Order is not ultimately vacated by the Court of Appeals for the Federal Circuit for (1) being based on erroneous conclusions of law, (2) being based on clearly erroneous findings of fact, and (3) containing findings for which there was no supporting evidence in the record. As the Federal Circuit explained in *Fraige v. American-Natl. Watermattress Corp.*, 996 F.2d 295 (Fed. Cir. 1993):

> "An order denying a motion to set aside a judgment under Rule 60(b) is reviewed under an abuse of discretion standard. *Bunch v. United States*, 680 F.2d 1271, 1283 (9th Cir.1982). An abuse of discretion exists when (1) the lower court's decision is based on an erroneous conclusion of law, or (2) on a clearly erroneous finding of fact; (3) the record contains no

evidence on which the lower court rationally could have based its decision; or (4) the court's decision is clearly unreasonable, arbitrary or fanciful. *Heat & Control, Inc. v. Hester Indus. Inc.*, 785 F.2d 1017, 1022 (Fed.Cir.1986); accord *Hunt v. National Broadcasting Co.*, 872 F.2d 289, 292 (9th Cir.1989); *Abatti v. Commissioner*, 859 F.2d 115, 117 (9th Cir.1988)"

An abuse of discretion exists if a conclusion of law is erroneous in any way. Errors of law are reviewed *de novo*, with no deference paid to the interpretation of the lower court. The Federal Circuit reviews Rule 60(b) rulings that pertain to patent law in order to maintain uniformity in the way district courts treat the issues. *Fiskars, Inc. v. Hunt Mfg. Co.*, 279 F.3d 1378, 1381 (Fed. Cir. 2002).

The Order will be vacated on appeal if it depends upon a finding of fact that is "clearly erroneous". "A factual finding is clearly erroneous if, despite some supporting evidence, we are left with the definite and firm conviction that a mistake has been made." *Insite Vision, Inc. v. Sandoz, Inc.*, 783 F.3d 853, 858 (Fed. Cir. 2015); *Pfizer, Inc. v. Ranbaxy Labs. Ltd.*, 457 F.3d 1284, 1288 (Fed. Cir. 2006). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Biovail Corp. v. Andrx Pharmaceuticals*, 239 F.3d 1297, 1300 (Fed. Cir. 2001). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed . . ." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985). Thus, a finding of fact by a district judge is "clearly erroneous" if, despite some supporting evidence, the appeals court is left with the definite and firm conviction that a mistake was made.

The Order will be vacated if the Federal Circuit is left with the definite and firm conviction that the Court mistakenly attributed to Mr. Lawrie the intention to hide his relationship with Jusama based on the erroneous factual findings that a note was exchanged between Mr. Lawrie and his attorney during a deposition and that any discovery requests to Zinus regarding HQV would not have disclosed the

beds that Jusama Group Consulting Inc. ("Jusama") purchased from Woody

Furniture Manufacturer Sdn. Bhd. ("Woody").  The Order will be vacated (even if

there is some supporting evidence cited by the Court) where the weight of the

evidence to the contrary was ignored.

## III.   LEGAL ARGUMENT

### A. The Order To Set Aside Should Be Rescinded Because It Relies On An Erroneous Conclusion Of Law Relating To Diligent Discovery

The Court set aside Zinus' judgment under Rule 60(b)(3) on the grounds that it

was obtained through alleged misrepresentations of Colin Lawrie relating to (i) his

knowledge of beds purchased from Woody, and (ii) his business relationship with

Jusama. (Dkt. 295, pp. 12, 15)  Rule 60(b)(3) includes a due diligence requirement

requiring that the alleged "<u>fraud</u> . . . <u>not be discoverable</u> by due diligence before or

during the proceedings." *Casey v. Albertson's Inc.*, 362 F.3d 1254, 1260 (9th Cir.

2004) (quoting *Pac. & Arctic Ry. and Navigation Co. v. United Transp. Union*, 952

F.2d 1144, 1148 (9th Cir. 1991) (emphasis added).  Thus, the judgment could proper-

ly have been set aside only if the two alleged misrepresentations regarding Jusama

and the bed purchases from Woody could not have been discoverable by due diligence

before or during the proceedings.  In this regard, the Order is based on two erroneous

legal conclusions relating to the due diligence requirement of Rule 60(b)(3).

First, the Court erroneously interprets Rule 60(b)(3) as allowing relief even

though the alleged misrepresentations would have been discoverable through

diligent discovery.  Second, the Court erroneously interprets Rule 60(b)(3) to allow

relief despite there being a lack of due diligence in those circumstances where the

Court finds that uncovering the misrepresentations would have been "unlikely" or "a

mere possibility".

### i.   The Order Relies On The Erroneous Conclusion Of Law That Rule 60(b)(3) Relief Is Available Where The Alleged Misrepresentations Would Have Been Discoverable

The legal conclusions in the Order concerning the discoverability of the

alleged misrepresentations are based on the assumption that diligent discovery efforts by Cap Export would not likely have uncovered those misrepresentations because (i) the Court was not aware of any evidence that Zinus possessed any knowledge of the on-sale activity by Woody and Jusama, and (ii) "the unique nature" of on-sale prior art which is not widely available in the public record. (Dkt. 295, 18:12, 24-26)  The Order replaces the requirement of Rule 60(b)(3) that the misrepresentations <u>would not have been discoverable</u> with a new, less-stringent requirement that the misrepresentations <u>would unlikely have been discoverable</u> using Cap Export's methods even if "an alternate course of discovery would have uncovered the fraud [or misrepresentations]." (Dkt. 295, 20:22-23)  It was legal error for the Court to decline to interpret Rule 60(b)(3) as requiring that the Jusama purchases of Woody beds "not be discoverable" through those alternate discovery means.  Clearly, the alleged misrepresentations were discoverable through alternate courses of discovery than those undertaken by Cap Export, and therefore the Order improperly interprets Rule 60(b)(3) as allowing the judgment to be set aside.

The Court's rationale for granting relief under Rule 60(b)(3) despite the fact that the alleged misrepresentations would have been discoverable is that the misrepresentations made the discovery more difficult.  The Court concludes that requiring due diligence "would effectively excuse misrepresentations by an opposing party in all circumstances where an alternate course of discovery would have uncovered the fraud." (Dkt. 295, 20:22-23)  But that is precisely the effect of Rule 60(b)(3); that is the law.  Misrepresentations that were discoverable by alternate discovery means do not fall within the category of fraud that was not discoverable by due diligence. *See Casey v. Albertson's Inc.*, 362 F.3d at 1260. Fraud and misrepresentations that do not rise to the level of "fraud on the court" are no grounds for setting aside a judgment where they could have been uncovered by diligent discovery.  None of perjury by a witness, non-disclosure, or inequitable conduct in procuring a patent constitute "fraud on the court". *Broyhill Furniture*

MEMO IN SUPPORT OF ZINUS'                    2:16-cv-00371 SVW (MRWx)
MOTION FOR RECONSIDERATION- 5 -
OR CERTIFICATION FOR APPEAL

*Industries, Inc. v. Craftmaster Furniture Corp.*, 12 F.3d 1080 (Fed. Cir. 1993); *Appling v. State Farm Mut. Auto. Ins. Co.*, 340 F.3d 769 (9th Cir. 2003); *In re Levander*, 180 F.3d 1114, 1119 (9th Cir. 1999); *In re Intermagnetics America, Inc.*, 926 F.2d 912, 916 (9th Cir. 1991). And the Order does not find that Mr. Lawrie's alleged misrepresentations constitute "fraud on the court". Thus, Rule 60(b)(3) does excuse all misrepresentations by an opposing party in all circumstances where alternate means of discovery would have uncovered the misrepresentations if those misrepresentations do not rise to the level of "fraud on the court". The Court's refusal to interpret Rule 60(b)(3) in this manner is legal error.

Mr. Lawrie's two alleged misrepresentations would have been discoverable by diligent discovery despite the two factors noted by the Court: (i) the assumed lack of evidence that Zinus possessed any knowledge of the on-sale activity by Woody and Jusama, and (ii) the purported "unique nature" of on-sale prior art which is not widely available in the public record. It was improper to consider these factors when deciding whether to set aside a judgment under Rule 60(b)(3). The only consideration is whether the misrepresentations were discoverable by due diligence.

Not only were the two alleged misrepresentations discoverable by alternate discovery means than the meager efforts undertaken by Cap Export, but Mr. Lawrie's business relationship with Jusama and the beds purchased from Woody could easily have been uncovered if Cap Export had simply asked. It is undisputed that Colin Lawrie testified at length at his deposition in 2016 about his company HQV. (Declaration of Darien Wallace, ¶3, Exh. 1) Mr. Lawrie testified in 2016 that bed frames were sold through HQV and that he had visited China up through 2012 about 10-12 times while he worked at HQV as a sales rep. (D. Wallace Decl., Exh. 1, 24:15-18; 27:5-11) Thus, if Cap Export had simply requested all documents from Zinus containing the search terms "hqv" and "bed", Zinus' attorneys would have searched through the emails on Zinus' domain @zinusinc.com and found emails relating to the Jusama purchases of Woody beds. (D. Wallace Decl., ¶6) But

MEMO IN SUPPORT OF ZINUS'                    2:16-cv-00371 SVW (MRWx)
MOTION FOR RECONSIDERATION- 6 -
OR CERTIFICATION FOR APPEAL

because Cap Export's attorneys made no such discovery request, counsel for Zinus was under no obligation to perform a search with the aforementioned terms and, in fact, did not perform such any such search before May 2020. (D. Wallace Decl., ¶4)

The Court's erroneous finding that Lawrie could have prevented disclosure of the Woody shipments "in response to a discovery request made to Zinus" (Dkt. 295, 18:26-29) is a finding without any evidentiary basis. There is, however, evidence to the contrary. Any discovery request would have been received by Zinus counsel, not by Mr. Lawrie. (D. Wallace Decl., ¶¶6-8) Zinus counsel would have dutifully collected all zinusinc.com emails, reviewed the emails for privilege, and would have produced all unprivileged responsive documents. (D. Wallace Decl., ¶¶6-8)

By searching through zinusinc.com emails for the terms "hqv" and "bed", counsel for Zinus has now found many emails relating to the purchase order for Woody beds from Jusama referred to in the Order as the shipment in February 2013. (Dkt. 295, 9:22-23) The Court cites to Cap Export's Exhibit 503, which is designated by Woody's purchase order number WMO 12591 and HQV's purchase order number 225. Cap Export's Exhibit 503 lists "HQV (Canada) . . . PO#  #225". (Dkt. 275, p. 25 of 38, Exh. 503) The 12/05/2012 version of the purchase order no. 225 was attached to an email dated December 5, 2012 from Debra Canini, "Director of Finance & Operations, HQV Inc/ Jusama Group Inc." and related to 400 PC001C Mersin platform beds, as well as "2 or 3 samples of different platform beds with split rail so they can be shipped by UPS." (Declaration of Derek Choi, Exh. AF-AG) The email was sent from the address debra.canini@hqvinc.com to the address colin@zinusinc.com and mentions the "purchase order for the Woody beds from Jusama Consulting". The search for "hqv" in Zinus' emails also revealed an email dated February 23, 2013, from Debra Canini to Ping at the email address ping@woodyfurnituremfg.com, which states, "I haven't received the commercial documents yet for our PO# 225 . . .." (Choi Decl., Exh. AQ) Thus, the search for "hqv" in Zinus emails uncovered the Jusama bed purchases.

The recent search by Zinus' counsel for the term "hqv" in email strings in the domain zinusinc.com also returned an email dated 11/ 7/2012 from Warehouse.Staff@hqvinc.com to colin@zinusinc.com, which is signed by Mike Singerling, "Warehouse Manager, HQV Inc/ Jusama Group Inc." and relates to a head rest. (Choi Decl., Exh. AB)  Another email dated 7/4/2012 from jay.jeyabalasingam@ hqvinc.com to debra.canini@hqvinc.com, which is signed by Jay Jeyabalasingam, "Sales & Marketing, HQV Inc./ Jusama Group", relates to pillows and mattresses. (Choi Decl. Exh. AA)  Thus, the simple search for "hqv" uncovered Jusama.  The invoice for the third Woody shipment in the name of "HQV" and the employees who worked for "HQV/Jusama" is corroborating evidence that Jusama did business using the name "HQV", as Mr. Lawrie testified, and that Mr. Lawrie's failure to mention the word "Jusama" was not an attempt to conceal Jusama's involvement in the Woody shipments.  The Order fails to consider Cap Export's exhibit 503 showing the third Woody shipment made to Jusama in the name of HQV.

So it is clear that the two alleged misrepresentations by Mr. Lawrie would have been discoverable through a simple request for production of documents.  A document production request containing the term "hqv" would have returned emails relating to the business "HQV Inc./ Jusama Group" and would have revealed Mr. Lawrie's relationship with Jusama, and a request for documents containing the terms "hqv" and "bed" would have revealed the Jusama purchases of Woody beds.  These emails contain one of the very purchase orders from HQV that Cap Export relied upon as support for its motion to set aside the judgment and which the Court finds was concealed by Mr. Lawrie when he failed to mention "Jusama" in his deposition. (Dkt. 295, 9:22-23)

Thus, it is legal error to interpret Rule 60(b)(3) as allowing relief from a judgment even if the alleged misrepresentations would have been discoverable on account of the Court concluding that such discovery would have been difficult or unlikely.  It is impossible for a court accurately to determine whether the discovery

of a particular misrepresentation would have been likely or unlikely, so that
consideration should not be used to apply Rule 60(b)(3).  Here, the Court's
conclusion that Zinus was probably not in possession of any prior art related to the
Jusama purchases of Woody beds should not have been a consideration because it
was clearly false.  Because the two alleged misrepresentations by Mr. Lawrie would
have been discoverable through a simple document production request using
information that Mr. Lawrie disclosed at his 2016 deposition, the Order improperly
applies Rule 60(b)(3) to set aside the judgment.

### ii. The Order Relies On The Erroneous Conclusion Of Law That Rule 60(b)(3) Relief Is Available Despite A Lack Of Due Diligence In Uncovering Misrepresentations

In addition, the Court simply disregards the due diligence requirement of Rule
60(b)(3) and finds that where there is only a "mere possibility" that an alternate
discovery means would have uncovered the alleged misrepresentations, "relief under
60(b)(3) should not be foreclosed by a lack of due diligence in these circumstances."
(Dkt. 295, 20:7-10)  The Court concludes that Mr. Lawrie's alleged misrepresenta-
tions "denied Cap Export that opportunity to exercise reasonable due diligence,"
thereby acknowledging that Cap Export did not exercise reasonable due diligence.
(Dkt. 19:5-6)  However, Cap Export's lack of diligence is not excused by the alleged
misrepresentations.  Relief under Rule 60(b)(3) <u>is always foreclosed by a lack of due</u>
<u>diligence</u> and cannot be granted simply because a court finds that uncovering such
misrepresentations would have been difficult.  Setting aside the Order despite the lack
of diligent discovery by Cap Export's attorneys was legally erroneous.

Cap Export argued that it performed diligent discovery by serving
interrogatories and requests for production on both Lawrie and Zinus. (Dkt. 295,
17:26-28)  But Cap Export did not serve any Rule 34 request for production of
documents calling for Zinus to produce any emails in its possession relating to any
on-sale prior art activity.  Cap Export did not serve any document production
requests to which documentary evidence of the three Jusama purchases would have

MEMO IN SUPPORT OF ZINUS'                      2:16-cv-00371 SVW (MRWx)
MOTION FOR RECONSIDERATION- 9 -
OR CERTIFICATION FOR APPEAL

been responsive.  Cap Export did not serve any Rule 33 interrogatories asking Zinus to identify all public uses and offers to sell the inventions of each asserted claim prior to the date of the application for the '123 Patent.  That is standard practice in a patent case.  The Order finds that Cap Export's interrogatories did not ask about prior art, but merely asked Zinus to state all facts supporting why the '123 Patent is valid and not obvious. (Dkt. 295, 18:15-19)  The Order acknowledges that Cap Export did not depose the inventor about on-sale activity.  Yet the Court excuses this lack of diligence by finding that it would have been unlikely that the Jusama purchases of Woody beds would have been uncovered through a deposition of the inventor or through more effectively drafted interrogatories or requests for production because the Court was not aware of any evidence that Zinus actually had knowledge of the Jusama purchases. (Dkt. 295, 18:21-26)  But lack of diligence cannot be excused just so that relief can be granted under Rule 60(b)(3).  The Court makes the erroneous legal conclusion that Rule 60(b)(3) relief is available despite a lack of due diligence to uncover alleged misrepresentations merely because uncovering those misrepresentations using particular discovery tools might have been unlikely.  A diligent discovery attempt is always required for relief under Rule 60(b)(3).

The due diligence inquiry under Rule 60(b)(3) concerns not what the movant did discover or could have discovered, but rather what discovery efforts the movant undertook.  "Failing to properly litigate a case is not grounds for relief under Rule 60(b)(3).  . . .  Rule 60(b)(3) is reserved for litigants who were prevented from fully and fairly presenting their case because of the opposing sides' misconduct, not for litigants or their counsel who failed to do so on their own accord. [cite omitted] ("Rule 60(b)(3) should not reward the lazy litigant who did not adequately investigate his or her case.")."  *United States v. Int'l Fid. Ins. Co.*, No. CV 16-8064-DSF-(AGRx), 2019 BL 493803 *3-*4, 2019 WL 6971381 (C.D. Cal. Apr. 02, 2019)  It was improper for the Court to attempt to consider the likelihood of uncovering Mr. Lawrie's alleged misrepresentations had Cap Export diligently pursued various

MEMO IN SUPPORT OF ZINUS'                    2:16-cv-00371 SVW (MRWx)
MOTION FOR RECONSIDERATION- 10 -
OR CERTIFICATION FOR APPEAL

courses of discovery. The only consideration regarding due diligence should have been whether Cap Export undertook diligent discovery. Considering whether a discovery means would likely have uncovered particular evidence is merely an excuse for not diligently following that course of discovery. There is no legal basis for excusing a lack of due diligence in order to justify relief under Rule 60(b)(3).

**B. The Order Relies On The Finding of Fact "There Is No Evidence That Zinus Had Any Prior Art Or Knowledge Of The Woody Purchases"**

In support of its ultimate decision, the Court first found that Mr. Lawrie made affirmative misrepresentations and that those affirmative misrepresentations concealed the existence of three sales of prior art beds from Woody to Jusama. Relief under Rule 60(b)(3) requires that the alleged misrepresentations would not have been discoverable by due diligence. *Casey v. Albertson's Inc.*, 362 F.3d at 1260. Whether the misrepresentations occurred is of no consequence if the misrepresentations could have been discovered by Cap Export through due diligence. The record includes ample evidence of Cap Export's lack of diligence. So the Court attempts to excuse Cap Export's lack of diligence by concluding that it would have been unlikely that the Jusama purchases of Woody beds would have been uncovered through a deposition of the inventor or through more effectively drafted interrogatories or requests for production by finding, "There is no evidence that Zinus . . . actually had any prior art or knowledge of the Woody purchases." (Dkt. 295, 18:21-26) The Court's reasoning evidently is that Cap Export's lack of diligence was harmless because had Cap Export served document production requests, Zinus would not have produced any documentary evidence of the Jusama purchases because Zinus was not in possession of any such documentary evidence.

**C. The Finding of Fact "There Is No Evidence That Zinus Had Any Prior Art Or Knowledge Of The Woody Purchases" Is Clearly Erroneous**

The finding of fact that "[t]here is no evidence that Zinus . . . actually had any prior art or knowledge of the Woody purchases" is clearly erroneous. Not only is the finding demonstrably false, but the finding was also made without any

MEMO IN SUPPORT OF ZINUS'
MOTION FOR RECONSIDERATION- 11 -
OR CERTIFICATION FOR APPEAL

2:16-cv-00371 SVW (MRWx)

evidentiary support whatsoever.  Contrary to the factual assertion made by the Court, the actual fact is that ***Zinus has all along had, sitting in its backed-up emails, evidence of prior art and evidence of at least one of the three Jusama purchases***. The evidence was always there, waiting to be produced to Cap Export lawyers if they had only asked for its production.

In document discovery in patent litigation, it takes time and money to collect all the old emails of various employees of a company, who might be using different computers and devices over time, and who might be spread across the world.  It also takes time and money to look through those emails in response to a Rule 34 request for production of documents.  Due to the extreme dereliction of the Cap Export lawyers, and their undeniable failure to serve any Rule 34 request for production of documents on Zinus that would have required Zinus to go back and look through old backed-up emails, it is a simple fact that nobody from Zinus went to the effort to compile an archive of old emails on the zinusinc.com domain, to review those emails for privilege, and to assess the emails for content with respect to the issues in this patent litigation. (D. Wallace Decl., ¶4)  Neither Zinus, nor its lawyers, was ever under any obligation to do so.  That Zinus lawyers did not take it upon themselves to go back and review old zinusinc.com emails was no secret.  The Court could have known this had the Court simply asked Zinus' lawyers at an evidentiary hearing. (D. Wallace Decl., ¶5)

Attached to this motion as Exhibits AA-CC to the Declaration of Derek Choi are selected documents that were found when some of the very many relevant emails backed up on the zinusinc.com servers were examined for the first time, starting on May 12, 2020.  Exhibits AF-AR clearly contain evidence of the third Woody shipment that the Court maintains was concealed by Mr. Lawrie's failure to disclose "Jusama" at his 2016 deposition.  The Court will recall that this third Woody shipment in February 2013 was identified by the Woody purchase order number WM 12591 and the HQV purchase order number 225. (Dkt. 275, p. 25 of 38, Exh.

503)  (The Woody purchase order of Exh. 503 is made out to "HQV" instead of to Jusama.)  In his follow-up deposition on November 15, 2019, Mr. Lawrie was deposed about this third Woody shipment in connection with deposition exhibit 561, which is a copy of Exhibit 503. (Dkt. 287-1, p. 152 of 223, Exh. G)

In the email of Exhibit AC, Colin Lawrie (using the HQV email address of Colin.Lawrie@hqvinc.com) writes to "Ping" of Woody.  In his email dated November 28, 2012, to Woody, Mr. Lawrie states, "Hi Ping, we are about to order some more containers of product.  Can you please send me your latest catalogue . . .."  In response, Ping of Woody writes back in the email of Exhibit AD and tells Mr. Lawrie that she will send a catalogue, and she asks Mr. Lawrie to confirm a Jusama mailing address of "Jusama Group Inc., 92 Scarsdale Road, Don Mills, Ontario, M3B 2R7".  The subject line of Ping's response email states: "Woody - quotation".

Exhibit CD is the sales catalogue of Woody products referred to in paragraph 7 of the declaration of Peng Defranco dated October 7, 2019. (Third Declaration of Peng Defranco, Exh. A)  The sales catalogue is mentioned in the Order at page 8.  The catalogue includes the image of a bed designated as CNLT-001A that was included in the declaration of Peng Defranco of October 7, 2019.  The last page of the catalogue sets forth the date of the catalog as: "18 November 2011 (Ping)".  The first page of the sales catalogue lists the publicly available website at which Woody advertises the furniture pictured in the catalogue; the website is "www.woodyfurnitureind.com".  Thus, pictures of the Woody beds from the sales catalogue were publicly available on the Internet.

The email of Exhibit AF also relates to the third Woody shipment.  The email is from Debra Canani to Colin Lawrie and has the subject line "Woody PO revised."  The signature block of the email indicates that Debra Canini was the Director of Finance for both "HQV Inc." and "Jusama Group Inc."  References to both companies HQV and Jusama are plainly seen, sitting side by side, in this email.  Ms. Canani is using a "hqvinc.com" email address that contains the letters "hqv".  In her email, Ms.

Canini informs Mr. Lawrie about a "revised purchase order for the Woody beds".
Exhibit AG is the attachment to the email of Exhibit AF and is purchase order no. 225
dated 12/5/2012, from Woody to Jusama relating to 400 PC001C beds and "2 or 3
samples of different platform beds with split rail so they can be shipped by UPS".
This purchase order 225 clearly relates to the third Woody shipment in February 2013
covered by Woody purchase order no. WM 12591. (Dkt. 275, p. 25 of 38, Exh. 503)

Mr. Lawrie testified at length about HQV at his first deposition in 2016.
(D. Wallace Decl., ¶3, Exh. 1)  Had the Cap Export lawyers simply served a Rule 34
document production request for Zinus to produce all documents in Zinus'
possession that included the terms "HQV" and "bed", then the lawyers for Zinus
who were served with that Rule 34 document production request would have been
compelled to locate the email and attachment of Exhibits AF-AG, put production
numbers on the documents, review the documents for privilege in normal fashion,
and then produce the documents to Cap Export.  Cap Export lawyers simply did not
ask for Zinus to produce any such documents.  Moreover, the finding of fact that
there is no evidence that Zinus actually had any prior art or knowledge of the Woody
purchases is clearly erroneous.

Exhibit AH is another email from Ping of Woody to Colin Lawrie dated
12/7/2012.  Ping states, "We have some other beds also could be packed in one box,"
and she attaches to her email what she calls "attached images" of beds.  The "attached
images" are Exhibits AI, AJ and AK.  Exhibit AI is actually a sales brochure from
"WOODY Furniture Manufacturer Sdn. Bhd".  The bed pictured in the brochure is
indicated by the brochure itself to be a "1PC-PACKED BED" having an item number
of "PC001F".  The "Packing" of the pictured bed is described as "1set/ctn".  The
brochure is dated at the bottom, "Date: 07 December 2012 (Ping)".  Thus, the
brochure has the same date as the email (Exhibit AH) to which it was attached.

Exhibits AM and AN are emails that also pertain to the third Woody shipment.
The subject lines of the two emails read, "JUSAMA SHIPPING DOCUMENT - WMI

12591 - Mersin". The email of Exhibit AN is from Serene Chee of Woody to Colin Lawrie. Ms. Chee acknowledges payment for the Jusama shipment, stating "Payment receive with thanks". Attached to Ms. Chee's email are two PDF documents attached as Exhibits AO-AP. Exhibit AO is a shipping document that refers to order no. "225" and to proforma invoice no. "WMI12591". Both the Woody invoice no. 12591 and the HQV invoice no. 225 are also listed on Exhibit 503 to the deposition of Agnes Tan, which relates to the third Woody shipment. (*See* Dkt. 275, p. 25 of 38, Exh. 503; Dkt. 295, 9:23) Exhibit AO lists Woody as the shipper, and lists "JUSAMA GROUP CONSULTING INC" as the consignee. The document lists the "SHIPPED ON BOARD" date of February 7, 2013 ("07/02/13"). Similarly, the Certificate of Origin document of the email attachment of Exhibit AO in a column entitled "Number and date of invoices" lists the Woody invoice no. "WMI12591" and an invoice date of "FEB 4, 2013". Thus, Jusama is clearly listed as the consignee on Exhibits AO-AP.

Exhibit AQ is yet another email referencing the third Jusama purchase. The email is from Ms. Debra Canini of HQV (who again lists herself as the Director of Finance of "HQV Inc/Jusama Group Inc"). The email is addressed to Ping of Woody. In the body of the February 23 email, Ms. Canini informs Ping that she has not received the "commercial documents" "for our PO# 225 that is arriving next week."

Exhibit AR is a response email from Ping that forwards the requested commercial documents as attachments. The subject line of Ping's email is "Commercial documents". The "Attachments" line of the email reads "JUSAMA SHIPPING DOCUMENT - WMI 12591 -- Mersin". This email clearly includes the name of the company "HQV Inc" along with the name of the company "Jusama Group Inc." Thus, a request for documents containing the term "hqv" would have revealed Jusama and the February 2013 Woody shipment.

Zinus is confident that a three-judge panel of the Court of Appeals for the Federal Circuit, in reviewing all these emails that were in Zinus' possession, would be left with the <u>definite and firm conviction</u> that this Court made a mistake in

MEMO IN SUPPORT OF ZINUS'                  2:16-cv-00371 SVW (MRWx)
MOTION FOR RECONSIDERATION- 15 -
OR CERTIFICATION FOR APPEAL

finding that: 1) Zinus had no prior art or knowledge of the Woody shipments, and 2) diligent discovery requests by Cap Export would not have revealed the Woody shipments to Jusama.

### D. The Finding of Fact "Lawrie's Misrepresentations Prevented Cap Export From Fully And Fairly Presenting Its Defense" Is Clearly Erroneous

The Court made the finding of fact that Mr. Lawrie's alleged misrepresentations "prevented [Cap Export] from fully and fairly presenting [its] defense." (Dkt. 295, 16:28-17:1)  Specifically, the Court found that Mr. Lawrie made an affirmative misrepresentation by testifying in 2016 that his business in Canada was "HQV" and omitted any reference to Jusama. (Dkt. 295, 10:15; 12:3; 15:24; 16:3, 6; 19 fn 4)  The Court even found that Mr. Lawrie made "efforts" to conceal Jusama. (Dkt. 295, 18:29)  The Court found that Cap Export was prevented from fully and fairly presenting its defense based on Mr. Lawrie's alleged intentional evasion of any reference to Jusama in this litigation and the Court's assumption that Cap Export had no way of discovering the Jusama purchases from Woody without Mr. Lawrie's disclosure of Jusama. (Dkt. 295, 16:6)

The Court's finding that Mr. Lawrie's purported concealment of Jusama prevented Cap Export from discovering the Woody shipments and thereby prevented Cap Export from presenting its defense is clearly erroneous.  The evidence clearly shows that Cap Export could have discovered the Woody shipments by searching for §102 on-sale activity by HQV prior to the filing date of the '123 Patent.  The evidence shows that searching for the word "Jusama" was not the only way to uncover the Woody shipments.  Mr. Lawrie didn't even have a Jusama email address, so he used his HQV email for HQV/Jusama business. (Dkt. 276, 145:20-22)

Exhibit 505 to the deposition of Agnes Tan includes emails from 2012 with the reference "**HQV** PO#7073 – PO# WMI 11190 --- Mersin Bed".  These emails refer to PC001C beds.  The emails are sent to and from the email address Peng.Defranco@**hqv**inc.com.  The Order even refers to Exhibit 505 and notes that

the emails also were copied to colin@zinusinc.com. (Dkt. 295, 9:26-10:1)  Thus, the alleged concealment of the word "Jusama" did not prevent Cap Export from serving interrogatories and requests for production of documents on Zinus relating to any on-sale activity by HQV and thereby discovering the Woody shipments of PC001C beds.  The clearly erroneous finding of fact that Cap Export had no way of discovering the Woody shipments without Mr. Lawrie's disclosure of Jusama resulted from the manifest failure of the Court to consider the facts presented to the Court showing that Jusama did business in 2012-2013 using the name of HQV.

In addition, the multitude of emails and attachments relating to the Woody shipments contained in Exhibits AA-CC could also have been uncovered by Cap Export without any knowledge of Jusama.  The documents of Exhibits AA-CC would have been produced in response to discovery requests upon Zinus related to "HQV" and "beds" to which Mr. Lawrie testified in 2016.  Thus, *had Cap Export's lawyers simply served discovery requests related to bed purchases by Mr. Lawrie's company HQV, Cap Export would have uncovered Exhibits AA-CC and thereby the Woody shipments*.  Therefore, Mr. Lawrie's alleged misrepresentations relating to Jusama did not prevent Cap Export from fully and fairly presenting its defense.

### E. The Finding of Fact "Counsel for Cap Export Cautioned Lawrie Against Exchanging Notes With His Attorney" Is Clearly Erroneous

The Court found that Mr. Lawrie made an affirmative misrepresentation by testifying in 2016 that his business in Canada was "HQV" as opposed to "Jusama". (Dkt. 295, 10:15; 12:3; 15:24; 16:3, 6; 18:29; 19:5 & fn 4)  The Court even found that counsel for Cap Export cautioned Mr. Lawrie against exchanging notes with his attorney and concluded that this purported note-passing with his attorney directly following testimony about "HQV" was intended to evade any reference to Jusama. (Dkt. 295, 16:4-6)  Thus, the erroneous finding of note-passing was the basis for concluding that Mr. Lawrie's failure to mention "Jusama" was intentional evasion. However, Mr. Lawrie's purported concealment of "Jusama" through the exchange of notes with his attorney never happened.  And the Court's finding is clearly erroneous

1  that "counsel for Cap Export cautioned Lawrie against exchanging notes with his

2  attorney". (Dkt. 295, 5:28-6:1)

3       There is absolutely no evidence that Mr. Lawrie exchanged notes with his

4  attorney during his 2016 deposition.  In addition, there is no evidence that Cap

5  Export's attorney cautioned Mr. Lawrie against exchanging notes with his attorney.

6  In fact, the deposition transcript indicates that Cap Export's attorney cautioned Mr.

7  Lawrie against reading during his deposition.  The relevant passages of Mr. Lawrie's

8  2016 deposition are reproduced below. (D. Wallace Decl., ¶3, Exh. 1, 22:1-13)

```
 1      A.  HQV.
 2      Q.  HQ- -- V like Victor?
 3      A.  Yes.
 4      Q.  What did that stand for, if anything?
 5      A.  Nothing really.
 6      Q.  Colin, I do want to caution you, you're not
 7  really supposed to be -- they're passing notes to each
 8  other.  You're not supposed to be reading while we're
 9  doing discussion, while we're doing the deposition.  So
10  if you're going to be tempted to look over I'll have
11  them move down a little bit more.  But if you want to
12  talk to them at any point, you can, we'll just go off
13  the record.
```

20  Cap Export's attorney never suggested that any note was ever passed to Mr.

21  Lawrie or by Mr. Lawrie.  The only reference to note-passing in the transcript is the

22  single phrase "they're passing notes to each other," which the Court has obviously

23  misconstrued.  This statement does not caution Mr. Lawrie against exchanging notes

24  with his attorney.  The statement does not caution against passing notes in any way.

25  The statement does not caution Mr. Lawrie not to pass notes to his attorney, and the

26  statement certainly does not caution Mr. Lawrie's attorney against passing notes to

27  Mr. Lawrie. (D. Wallace Decl., ¶2)

28       Not only is there no evidence that Mr. Lawrie exchanged notes with his

MEMO IN SUPPORT OF ZINUS'                    2:16-cv-00371 SVW (MRWx)
MOTION FOR RECONSIDERATION- 18 -
OR CERTIFICATION FOR APPEAL

attorney or even that he was cautioned not to do so, but there is evidence that no note was passed between Mr. Lawrie and his attorney.  Darien Wallace was the attorney defending Mr. Lawrie at his deposition, and Mr. Wallace presented a declaration to the Court before the decision of the Order declaring under oath that no note-passing occurred. (Dkt. 258-1)  The Wallace declaration states that no note from any attorney was passed to or even shown to Mr. Lawrie during the deposition, and no Zinus attorney coached Mr. Lawrie during the deposition. (Dkt. 258-1, ¶¶4-6) Slanderous attorney argument from Cap Export's current attorneys regarding note-passing is not evidence and should not have been considered by the Court.  None of Cap Export's current attorneys was present at Mr. Lawrie's 2016 deposition because Cap Export was represented by different attorneys at that time.  The clearly erroneous finding of fact that Mr. Lawrie exchanged notes with his attorney resulted from the manifest failure of the Court to consider the facts presented to the Court in the Wallace declaration. (Dkt. 258-1)

Despite the fact that no note-passing occurred, the decision of the Order was based on the Court's impression that note-passing demonstrated Mr. Lawrie's intentional evasion of any reference to Jusama.  The Court's multiple references to note-passing in the Order indicate that the decision of the Order was influenced by the purported note-passing that never occurred. (*See* Dkt. 295, 5:28-6:1; 8:13; 15:8, 16, 25; 16:4)  The basis for the Order setting aside the judgment falls apart when the factual findings are shown to be clearly erroneous that (i) Mr. Lawrie exchanged notes with his attorney, and (ii) the Woody shipments could not have been uncovered by searching for "hqv" as opposed to "Jusama".

## F.  The Court's Finding of What Constitutes "Due Diligence" Was Made Without Any Evidentiary Basis

The Court had ***no evidentiary basis*** upon which to base its factual finding regarding what conduct constitutes "due diligence" under Rule 60(b)(3) in a patent case.  The Court had no evidence before it as to what the standard of care is for

MEMO IN SUPPORT OF ZINUS'                    2:16-cv-00371 SVW (MRWx)
MOTION FOR RECONSIDERATION- 19 -
OR CERTIFICATION FOR APPEAL

patent attorneys practicing across the United States before the Federal Courts on the defense side in terms of investigating the existence of prior art. The Court did not hold an evidentiary hearing to take evidence on the issue of "due diligence". The Court did not receive evidence from any expert in patent litigation who could inform the Court, as a factual matter, as to what is competent in terms of conducting discovery in a patent case. The Court did not receive evidence as to whether it could ever be considered competent for an attorney to fail to serve a request for production of documents on the patent owner seeking the production of all relevant prior art of which patent owner was aware. The burden was on Cap Export to provide actual evidence as to what diligence is, and is not. Cap Export submitted no such evidence. As such, the Court had no business making its own decision on what "due diligence" is, to the clear and convincing standard, because the Court had no evidence upon which to base a finding.

Instead of considering evidence to determine whether Cap Export's discovery efforts to uncover the Woody shipments satisfied the due diligence standard, the Court declined to impose the due diligence requirement on Cap Export because of the purported "unique nature" of evidence showing that physical products were on-sale, which the Court found is difficult to find by searching only full-text databases. (Dkt. 295, 20:24-21:6) However, the discovery task facing Cap Export was not unique. The standard of competent practice in patent infringement defense requires an attorney who has pled invalidity to make an inquiry into uncovering evidence of public use and on-sale activity as defined by 35 U.S.C. §102. Zinus provides evidence below of the minimum diligence that must be performed to meet the standard of competent practice in a patent case. The evidence shows that Cap Export's attorneys did not meet the standard of competent practice to uncover on-sale activity, which is not "unique" but rather a consideration in every patent case.

### i. Judge Rader Submits Evidence For The Court's Consideration

Evidence in the form of a declaration of an expert, Judge Randall Rader, is

submitted on the matter of minimal attorney competence.  Judge Rader declares:

> "***The conduct of Cap Export's attorneys*** was not sufficient to show a diligent performance of discovery and ***falls far below the standard of care*** required and demanded of attorneys practicing patent litigation before the Federal Courts of the United States.  In my informed opinion, an attorney representing an accused infringer (where the infringer party has pled invalidity of the asserted patent) must serve formal discovery on the patent owner seeking from the patent owner all relevant prior art of which the patent owner is aware.  To fail to serve such formal discovery is to demonstrate attorney conduct that ***falls well short of a minimal bar of attorney competence***." (Declaration of Randall Rader, ¶29) (emphasis added)

Importantly, Judge Rader declares:

> "Fundamental attorney competence requires the service of such formal discovery regardless of whether a particular witness (for example, the president of the patent owner Zinus) might testify inaccurately in a deposition, or might make deliberate affirmative misrepresentations in an effort to conceal prior art." (Declaration of Randall Rader, ¶29)

Accordingly, the standard of care demanded of an attorney requires that the attorney serve proper discovery, including appropriate requests for production of documents, in every patent case as an initial step of conducting discovery.

Judge Rader declares: "The presumption of patent validity under 35 U.S.C. § 282 can be overcome only by clear and convincing evidence, such as evidence of prior art that anticipates or makes obvious the invention claimed in the patent. [cite omitted] There is a clear need for uniformity and certainty in the way district courts apply the due diligence requirement under Rule 60(b)(3) relating to the discovery of that prior art, so that similar hurdles for setting aside a patent infringement judgment are applied throughout the district courts.  ***The minimum standard of due diligence under Rule 60(b)(3) for discovering prior art in a patent case should never fall below the standard of care*** demanded of all attorneys practicing patent litigation before the Federal Courts of the United States." (Rader Decl., ¶31)(emphasis added)

The evidence given by Judge Rader is informed by his extensive experience and knowledge of how patent litigation is conducted in the various federal district

MEMO IN SUPPORT OF ZINUS'                    2:16-cv-00371 SVW (MRWx)
MOTION FOR RECONSIDERATION- 21 -
OR CERTIFICATION FOR APPEAL

courts across the United States.  As a judge sitting on the U.S. Court of Appeals for the Federal Circuit and the court's Chief Judge for many years, Judge Rader has had occasion to have many years of intimate familiarity with all manner of patent litigation matters that came before the Federal Circuit from districts all across the country. Judge Rader is also intimately familiar with attorney conduct at the trial court level due in part to Judge Rader's sitting by designation as the trial judge in many (approximately twenty) patent infringement cases.  Judge Rader's understanding of the workings of the U.S. court system in enforcing patent rights is widely recognized.

Zinus moves this Court to reconsider what constitutes "due diligence" in discovery in a patent case, but this time the Court should consider some evidence, including the evidence presented by Judge Rader.

### ii.  An Experienced Patent Litigator Submits Evidence For the Court's Consideration

More evidence in the form of a declaration of an expert, Mr. Fabio Marino, is submitted on the issue of minimal attorney competence.  Mr. Marino, as a trial attorney, has extensive knowledge of how competent patent attorneys search for prior art.  Mr. Marino has been involved in more than one hundred patent litigations. Mr. Marino is Chair of the IP Department of a large law firm, Polsinelli PC.  Mr. Marino teaches a class at the law schools of the University of Santa Clara and the University of California Berkeley on patent litigation ***on the very topic*** of what is required of an attorney in the way of conducting discovery in a situation in which the attorney has pled patent invalidity.  Mr. Marino's understanding of the standard of care required of patent lawyers in discovery is widely recognized.

The standard of care requires that an attorney representing an infringer, who has pled invalidity of a patent asserted against his client, serve proper formal discovery seeking from the patent owner all relevant prior art of which the patent owner is aware.  (Decl. of Marino, ¶20)  Mr. Marino declares that the attorney must serve such discovery regardless of the accuracy of the testimony of a percipient witness (e.g., the president of the patent owner).  (Decl. of Marino, ¶20)

MEMO IN SUPPORT OF ZINUS'                    2:16-cv-00371 SVW (MRWx)
MOTION FOR RECONSIDERATION- 22 -
OR CERTIFICATION FOR APPEAL

The Court should reconsider what constitutes "due diligence" in discovery in a patent case, but this time considering the evidence presented by Mr. Marino.

## IV. ZINUS' MOTION TO CERTIFY THE ORDER FOR INTERLOCUTORY APPEAL

Under 28 U.S.C. § 1292(b), a district court may approve the interlocutory appeal of an order when (1) the order involves a controlling question of law, (2) there is a substantial ground for difference of opinion concerning the legal question, and (3) an immediate appeal from the order may materially advance the ultimate termination of the litigation. *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010). This Court has previously applied these standards to certify orders for interlocutory appeal. *See, e.g., Helman v. Alcoa Global Fasteners, Inc.*, 2009 U.S. Dist. LEXIS 64720 (C.D. Cal. June 16, 2009), aff'd, 673 F.3d 986 (9th Cir. 2011); *linkLine Communications, Inc. v. SBC Calif., Inc.*, No. 2:03CV05265-SVW (C.D. Cal. Apr. 1, 2005) (D. Wallace Decl., Exh 2); *MGM Studios Inc. v. Grokster, Ltd.*, No. 2:01CV08541-SVW (C.D. Cal. June 18, 2003) (D. Wallace Decl., Exh 3). The decision to permit an interlocutory appeal under § 1292(b) is within the district court's discretion. *See Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 47 (1995).

As to the first factor, the issue of due diligence in a patent case under Rule 60(b)(3) is controlling because reversal of the Order based on the resolution of that issue would determine the outcome of this litigation. *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1982) The outcome of this litigation would be determined by a ruling of the Court of Appeals for the Federal Circuit that the due diligence requirement under Rule 60(b)(3) to search for prior art is the same in all patent cases and is not construed more leniently simply because the misrepresentation that is the basis for Rule 60(b)(3) relief is alleged to have been an affirmative misrepresentation. The outcome of the litigation would also be determined by a ruling of the Federal Circuit that in no event does the due diligence requirement under Rule 60(b)(3) to search for prior art in a patent case fall below the

standard of competence for patent attorneys.

As to the second factor, there is a difference of opinion as to whether the due diligence requirement of Rule 60(b)(3) should be more lenient in circumstances where on-sale activity in a patent case is to be uncovered and in circumstances in which affirmative misrepresentations are alleged.  The second factor is considered to be satisfied where "novel and difficult questions of first impression are presented" or where there are "a sufficient number of conflicting and contradictory opinions." *Couch v. Telescope Inc.*, 611, F.3d at 633.  The Court's reliance on dicta from the *M/V Peacock* decision to apply a more lenient standard to the due diligence requirement of Rule 60(b)(3) in some circumstances is at odds with the caselaw cited in the Order, all of which (including *M/V Peacock*) found that the due diligence exercised by the movant was insufficient to justify relief under Rule 60(b)(3). (*See* Dkt. 295, 20:12-21; *In re M/V Peacock on Complaint of Edwards*, 809 F.2d 1403 (9th Cir. 1987))  Moreover, all that is required to satisfy the second factor is that reasonable jurists might disagree as to the controlling question of law. *See Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011); *Fortyune v. City of Lomita*, 766 F.3d 1098, 1101 n.2 (9th Cir. 2014).  As is apparent when the Order is compared to the declaration of Judge Randall Rader, reasonable jurists might disagree as to the due diligence requirement of Rule 60(b)(3) that should be applied to discovery of on-sale prior art in a patent case.

As to the third factor, an appeal that reverses the Order would return this case to its prior terminated status and thereby would materially advance the ultimate termination of the litigation.  Additional summary judgment motions, discovery, new causes of action, and a trial could be avoided in this case if the Order is reversed on appeal.  Thus, an appeal could avoid protracted and expensive litigation.

In the event that the Court upon reconsideration does not rescind the Order, Zinus requests that the Court certify the Order for interlocutory appeal.  Zinus requests that the Court amend the Order (Dkt. 295) to state that the Order involves a

controlling question of law regarding the standard of due diligence under Rule 60(b)(3) in a patent case as to which there is substantial ground for difference of opinion and that an immediate appeal from the Order would materially advance the ultimate termination of the litigation.  Zinus requests that the amended Order stay the proceedings in the litigation.

The controlling questions of law to be certified for appeal are:

Does the due diligence requirement under Rule 60(b)(3) to search for prior art in a patent case remain the same regardless of the character of the fraud, misrepresentation or misconduct that is alleged as the basis for Rule 60(b)(3) relief?

Must the due diligence required under Rule 60(b)(3) to search for prior art in a patent case at all times at least satisfy the standard of care applicable to patent attorneys who have pled invalidity in a patent case?

## V.   CONCLUSION

For the foregoing reasons, Zinus requests that the Court reconsider and rescind its "Order Granting Cap Export's Motion To Set Aside Judgment Pursuant To Fed. R.Civ.P. 60(b)(3)" (Dkt. 295).  In the alternative, Zinus requests the Court to amend the Order and certify the questions presented herein to the Court of Appeals for the Federal Circuit pursuant to 28 U.S.C. § 1292(b).

Dated:  June 4, 2020                    IMPERIUM PATENT WORKS LLP

By:   _/s/ Darien K. Wallace_
                    Darien K. Wallace

Darien K. Wallace, Esq.
T. Lester Wallace, Esq.

*Attorneys for Defendant/Counterclaimant/*
*Third-Party Claimant*
ZINUS, INC.

MEMO IN SUPPORT OF ZINUS'                    2:16-cv-00371 SVW (MRWx)
MOTION FOR RECONSIDERATION- 25 -
OR CERTIFICATION FOR APPEAL