# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAP EXPORT, LLC, a California Limited Liability Company,<br><br>Plaintiff,<br><br>v.<br><br>ZINUS, INC., a California corporation; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 2:16-cv-00371-JWH (MRWx)<br><br>**MEMORANDUM OPINION AND ORDER ON MOTION FOR PARTIAL SUMMARY JUDGMENT RE INEQUITABLE CONDUCT [ECF No. 318] and MOTION FOR SUMMARY JUDGMENT RE INVALIDITY, ETC. [ECF No. 325]** |
| ZINUS, INC. a California corporation,<br><br>Counterclaimant,<br><br>v.<br><br>CAP EXPORT, LLC, a California Limited Liability Company,<br><br>Counterdefendant. | |
| ZINUS, INC., a California corporation,<br><br>Third-Party Claimant,<br><br>v.<br><br>ABRAHAM AMOUYAL, an individual; and 4MODA CORP., a California corporation,<br><br>Third-Party Defendants. | |

# I. **INTRODUCTION**

This action arises from a patent dispute concerning ready-to-assemble bed frames where the components of the frame fit inside the headboard and ship in a single box, nicknamed a "bed-in-a-box."  Defendant Zinus, Inc. holds U.S. Patent No. 8,931,123 (the "'123 Patent") covering such a bed frame.  In 2015, Zinus accused Plaintiff Cap Export, LLC of infringement on account of Cap Export's sale of products that are allegedly covered by the '123 Patent.  Cap Export responded by commencing this declaratory relief action.  Zinus filed a counterclaim and a third-party complaint for patent infringement against Cap Export and its principal, Third-Party Defendant Abraham Amouyal.  In the years that followed, the parties litigated this case extensively, which included the following procedural highlights:  (1) multiple motions for summary judgment; (2) the Federal Circuit's resolution of an appeal concerning this Court's order on one such motion; (3) the parties' settlement, through which Cap Export agreed to pay damages to Zinus arising from Cap Export's purported infringement; and (4) this Court's entry of a stipulated judgment based upon that settlement.

After Cap Export uncovered clear and convincing evidence that Zinus's patent expert and former president, Colin Lawrie, made several material misrepresentations during his deposition—including Lawrie's testimony regarding his lack of knowledge of prior art bed frames and his business relationship with an entity that purchased bed frames apparently similar to the frame eventually claimed in the '123 Patent—the Court set aside that stipulated judgment.[1]  Based upon these revelations, the Court allowed additional

---

[1]     *See* Order Granting Cap Export's Motion to Set Aside Judgment Pursuant to FRCP 60(b)(3) (the "Rule 60 Order") [ECF No. 295] (Judge Steven V. Wilson, presiding) (providing detailed case history and granting Rule 60(b)(3) motion to set aside judgment based upon fraud, misrepresentation, or misconduct by opposing party).  On May 5, 2021, in a published decision, the Federal Circuit affirmed in full the Court's Rule 60 Order.  *See Cap Export, LLC*

discovery and permitted the parties to file renewed motions for summary judgment.

Before the Court are two such motions. First, Cap Export and Abraham Amouyal seek summary judgment of patent invalidity, non-infringement, inequitable conduct, and unenforceability.[2] Second, Zinus seeks partial summary judgment that Colin Lawrie did not commit inequitable conduct.[3]

After considering the papers filed in support and in opposition of the Motions, including supplemental briefing,[4] and after conducting a hearing on the Motions on February 18, 2021, for the reasons stated below, the Court will **GRANT in part** and **DENY in part** Cap Export's Motion for Summary

---

*v. Zinus, Inc.*, ___ F.3d ___, No. 2020-2087, 2021 WL 1773696, at *1 (Fed. Cir. May 5, 2021) (affirming because "Lawrie, Zinus's president and expert witness, misrepresented his knowledge of highly material prior art," this Court "properly declined to condone such conduct," and this Court "did not abuse its discretion in granting the motion to vacate the judgment under Rule 60(b)(3)").

[2] *See* Cap Export, LLC and Abraham Amouyal's Mot. for Summ. J. of Patent Invalidity, Non-Infringement, Inequitable Conduct, and Unenforceability (the "Cap Export MSJ") [ECF No. 325].

[3] *See* Zinus Inc.'s Mot. for Part. Summ. J. That Colin Lawrie Did Not Commit Inequitable Conduct (the "Zinus PMSJ") [ECF No. 318].

[4] To resolve these Motions, in addition to the Court's prior orders in this case, the Court has considered the following papers and all of their respective attachments: (1) the Compl. [ECF No. 1]; (2) the Answer and Countercl. [ECF No. 38]; (3) the First-Am. Third-Party Compl. [ECF No. 179] and (4) the Answer thereto [ECF No. 337]; (5) the Cap Export MSJ [ECF No. 325], (6) the Opp'n thereto (the "Zinus Opposition") [ECF No. 363], and (7) the related Reply (the "Cap Export Reply") [ECF No. 368], and (8) the Zinus PMSJ [ECF No. 318], (9) the Opp'n thereto [ECF No. 364], and (10) the related Reply [ECF No. 367]. At the hearing on this matter, Zinus requested supplemental briefing, and the Court granted its request. *See* Order Re Supplemental Briefing on Motions for Summary Judgment [ECF No. 373]. After the parties filed their supplemental briefs, *see* Zinus Suppl. Br. [ECF Nos. 375]; Cap Export Supp. Br. [ECF No. 376], Zinus filed an *Ex Parte* Application to Strike Cap Export's Supplemental Brief [ECF No. 377]. Cap Export filed an Opposition [ECF No. 378]. The Court declined to strike the brief, but, "in the interest of providing a complete record for any appeal that may ultimately arise in this matter, and to ensure that Zinus has a full and fair opportunity to present its arguments on the underlying cross-motions for summary judgment," the Court "allow[ed] Zinus to file a reply to Cap Export's responsive supplemental brief," *See* Order on *Ex Parte* Application [ECF No. 379]. Accordingly, Zinus filed an additional brief. *See* Zinus Suppl. Reply [ECF No. 380].

Judgment. Specifically, the Court will grant the Motion on the issue of patent invalidity and will deny it as moot on the issues of infringement and inequitable conduct. The Court will **DENY as moot** Zinus's Motion for Partial Summary Judgment on the issue of inequitable conduct. After those rulings, the only remaining claim for relief in the case is Zinus's unfair business practices claim under Cal. Bus. & Prof. Code § 17200, which appears in both Zinus's counterclaim and its third-party claim. The Court will decline to exercise supplemental jurisdiction over this sole remaining state-law claim.

## II. LEGAL STANDARD

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). When deciding a motion for summary judgment, the Court construes the evidence in the light most favorable to the non-moving party. *Barlow v. Ground*, 943 F.2d 1132, 1135 (9th Cir. 1991). However, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original). The substantive law determines the facts that are material. *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* Factual disputes that are "irrelevant or unnecessary" are not counted. *Id.* A dispute about a material fact is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

Under this standard, the moving party bears the initial burden of informing the district court of the basis for its motion and identifying the portions of the pleadings and record that it believes demonstrate the absence of an issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

When the non-moving party bears the burden of proof at trial, the moving party need not produce evidence negating or disproving every essential element of the non-moving party's case. *Id.* at 325. Instead, the moving party need only prove there is an absence of evidence to support the non-moving party's case. *Id.*; *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). The party seeking summary judgment must show that "under the governing law, there can be but one reasonable conclusion as to the verdict." *Anderson*, 477 U.S. at 250.

If the moving party sustains its burden, the non-moving party must then show that there is a genuine issue of material fact that must be resolved at trial. *Celotex*, 477 U.S. at 324. A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. "This burden is not a light one. The non-moving party must show more than the mere existence of a scintilla of evidence." *Oracle Sec. Litig.*, 627 F.3d at 387 (citing *Anderson*, 477 U.S. at 252). The non-moving party must make this showing on all matters placed at issue by the motion as to which it has the burden of proof at trial. *Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 252.

## III. DISCUSSION

### A. Technology Background

Zinus is the assignee of the '123 Patent for an "assemblable mattress support whose components fit inside the headboard."[5] The patent issued on January 13, 2015,[6] and Suk Kan Oh is the named inventor.[7] The patent's Abstract explains that the claimed bed frame "can be shipped with all of its components compactly packed into the headboard."[8] As depicted below, "[t]he

---

[5]    *See* '123 Patent, *available at* ECF No. 179-1.
[6]    *Id.*
[7]    *Id.*
[8]    *Id.* at Abstract.

mattress support includes a foldable longitudinal bar, a lateral bar, side panels, wooden slats, block legs and a footboard, all of which fit inside a compartment in the headboard."[9]



According to the patent, this bed frame "overcomes the shortcomings of conventional beds" because it avoids the need for "multiple tools and many non-intuitive [assembly] steps" and avoids the "relatively heavy weight" of beds, which makes moving "cumbersome" and increases shipping costs.[10]

Claim 1 discloses:

A mattress support comprising:

a longitudinal bar with a first connector and a second connector;

a headboard with a compartment and a third connector; and

---

[9] *Id.*

[10] *See id.* at 1:34-45.

a footboard with a fourth connector, wherein the first connector is adapted to attach to the third connector, wherein the second connector is adapted to attach to the fourth connector, wherein legs are attached to a bottom side of the footboard, wherein the longitudinal bar and the footboard fit inside the compartment of the headboard, wherein the first connector is directly connected to the third connector, and the second connector is directly connected to the fourth connector in an assembled state of the mattress support, wherein the first connector is not connected to the third connector, and the second connector is not connected to the fourth connector in a compact state of the mattress support, and wherein the longitudinal bar and the footboard are contained inside the compartment in the compact state of the mattress support.[11]

The remaining non-method claims expand upon certain features of the bed frame. Claim 2 relates to the bed frame legs and discloses specific "headboard legs" and "footboard legs"; Claim 3 discloses a storage compartment that closes with a zipper; Claim 11 discloses support legs that are "pivotally attached" to the lateral bar where the legs attach directly to the footboard.[12] Claim 4 discloses a method for placing all of the components inside of the headboard storage compartment, with the remaining claims depending directly or indirectly from this method claim, further disclosing specifics related to packing the components into the headboard.[13]

---

[11] *Id.* at 6:20-40.
[12] *See id.* at 6:41-7:1-3 & 8:14-25.
[13] *See id.* at 7:4-26 & 8:1-13.

Zinus contends that Cap Export infringes Claims 1 through 3 of the '123 Patent, and, thus, the Court's analysis addresses only those claims.[14]

**B.    Patent Invalidity**

In its Motion for summary judgment, Cap Export raises several invalidity arguments regarding the '123 Patent. To streamline its analysis, the Court will summarize the parties' arguments and then address each of Cap Export's invalidity theories in turn.

**1.    Summary of the Parties' Arguments**

Cap Export seeks summary judgment of invalidity based upon the same theory that it presented to the Court to set aside the judgment. Specifically, Cap Export contends that when Lawrie was the president of Zinus, in connection with Lawrie's former company (*i.e.*, Jusama) Lawrie purchased a "bed-in-a-box"—called the "Mersin" bed—from a third-party manufacturer, Woody Furniture. Cap Export asserts that Lawrie made that purchase several years before September 25, 2013—the date that the application for the '123 Patent was filed.[15] Lawrie admitted during his 2019 deposition that contemporary email and documentary evidence confirms that he bought the beds, but Lawrie said that he did not remember doing so. The Court found that Lawrie misrepresented his knowledge of this bed-in-a-box, and the Federal Circuit affirmed that ruling. As relevant here, Lawrie denied any knowledge concerning whether and how the named inventor, Suk Kan Oh, learned of the public domain beds.[16] After the Court entered its order setting aside the judgment, Cap Export obtained emails supposedly showing that Lawrie ordered Woody's bed-in-the-box for shipment

---

[14]    *See* Zinus, Inc.'s First Am. and Supp. Third Party Complaint at ¶ 57 ("Claims 1-3 of the '123 Patent read on each and every one of the [accused] headboard bed frames.").

[15]    *See* Cap Export MSJ at 3:14-4:23.

[16]    *Id.* at 6:1-7:8.

-8-

to Oh in China, allegedly for "copying and patenting."[17]  Based upon those emails, Cap Export concludes that "Zinus's literal infringement claims against Cap Export's accused beds invalidate the '123 Patent because the accused beds are a carbon copy of Woody's earlier public domain beds."[18]

Cap Export argues that Lawrie's 2019 deposition testimony demonstrates invalidity because Lawrie admitted that Woody's "PC001C" bed "(a) [was] the same 'invention' by teaching all of the elements of claims 1, 2, and 3 of the '123 Patent; (b) was ready for patenting because physical embodiments were commercially purchased and sold; and (c) was in public use by way of presentation at tradeshows, sales to third parties, and Lawrie's purchase and sale of 1,205 units to the general public."[19]

Just as Lawrie testified that he could look at pictures of Cap Export beds to determine infringement, Cap Export likewise contends that the pictures of a prior art Woody bed-in-a-box demonstrate all of the elements of the '123 Patent, thereby invalidating its claims.[20]  Cap Export also argues that the patented bed is obvious in light of the Woody bed-in-a-box (a theory that the Court summarizes separately below).

Zinus responds that Cap Export's invalidity arguments fail because they are "based on a false premise that there existed a single, unique bed structure that Cap Export refers to as 'Woody's and XXITC's Public Domain Bed-In-A-Box.'"[21]  Zinus maintains that the design of the beds that Woody shipped to

---

[17]     *Id.* at 1.

[18]     *Id.* at 2:4-6.

[19]     *Id.* at 15:16-20.

[20]     *See id.* at 7:10-11:18.

[21]     Zinus Opposition at 1:4-6 (noting that XXITC was "Woody Furniture's factory named Xiamen Xinshunyang Industry and Trading Co., Ltd.," which ceased operations in 2015).

Lawrie in Canada changed across the three orders in 2010, 2012, and 2013.[22] Because Cap Export limited its claim-by-claim analysis to beds in the second Woody shipment, Zinus responds with respect to only that model.[23] Relatedly, Zinus contends that because Cap Export cited only two exhibits used in the Lawrie Deposition as evidence in support of its Motion, Zinus need respond to only that evidence.[24]

With respect to the first piece of evidence—the "Inspection Report"— Zinus maintains that the photographed bed lacks (1) a "first connector" and "second connector" on the longitudinal bar on the bed; (2) a "third connector" on the headboard and a "fourth connecter" on the footboard; and (3) an element corresponding to the limitation that "the second connector is directly connected to the fourth connector in an assembled state of the mattress support."[25] With respect to the second piece of evidence—the "Assembly Instructions"—Zinus argues that this document cannot show the missing claim limitations because Cap Export does not demonstrate that the Assembly Instructions relate to the same bed pictured in the Inspection Report.[26]

In an effort to defeat Cap Export's Motion, Zinus proffers several alleged disputes of material fact:

- Whether the Assembly Instructions relate to the same bed in the Inspection Report (Zinus claims that not all Woody bed-in-a-box products

---

[22]     *Id.* at 1-2.

[23]     *Id.* at 2.

[24]     *Id.* at 3; *see* Supplemental Declaration of David P. Beichtman Re Videotaped Deposition of Colin Lawrie Taken on November 15, 2019, in Canada (the "Lawrie 2019 Deposition") [ECF No. 276], Ex. 560, at p. 329 of 341 (the "Inspection Report"), and Ex. 557, at p. 314 of 341 (the "Assembly Instructions"). Zinus raises an evidentiary objection to the Assembly Instructions, which the Court addresses and overrules below.

[25]     Zinus Opposition at 3:27-4:11.

[26]     *Id.* at 4:26-8:4.

were the same and that the instructions visible in the Inspection Report photos are different than the Assembly Instructions).

- Whether the footboard in the Inspection Report bed has a "fourth connector" that connects a "second connector" on the longitudinal bar to the footboard, or, rather, only a "hole in the footboard."

- Whether the bed in the Inspection Report was publicly used for its intended purpose at a tradeshow, sold at a "commercial price," or subject to a "commercial sale," such that it qualifies as prior art.

- Whether the Assembly Instructions were ever published such that they are a prior art publication.[27]

Zinus also argues that, because Cap Export did not demonstrate a *prima facie* case of obviousness, there is nothing to which Zinus must respond, and Zinus will not "generate a strawman argument" so that Cap Export can "poke holes" in it.[28] Zinus further contends that the bed depicted in the Inspection Report is missing a "fourth connector" on the footboard; it is missing a "second connector" on the longitudinal bar adapted to attach to the fourth connector; and the unauthenticated Assembly Instructions cannot fill in any gaps.[29] Zinus asserts that Cap Export likewise fails to show that one skilled in the art would have had a reason to combine the various elements from the prior art to make the patented bed.[30]

### 2. **Analysis**

#### a. **Burden of Proof**

To obtain summary judgment of invalidity, a moving party must overcome the statutory presumption that issued patent claims are valid. *See* 35

---

[27] *Id.* at 4-18.
[28] *Id.* at 20:4-6.
[29] *Id.* at 20:11-18.
[30] *Id.* at 21:8-16.

U.S.C. § 282. That statute mandates that "[a] patent shall be presumed valid" and that "[t]he burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting such invalidity." *Id.* A party seeking to overcome the statutory presumption and to establish the invalidity of an issued patent claim must prove the invalidity by ***clear and convincing evidence***. *See Microsoft Corp. v. I4I Ltd. P'ship*, 564 U.S. 91, 112 (2011).

As the party seeking to invalidate the '123 Patent, Cap Export thus bears the burden of proving invalidity by clear and convincing evidence.

### b. Evidentiary Objections

Zinus raises a number of evidentiary objections.[31] The Court rules on only those objections that are material to its underlying decision. Where the Court does not rely on certain challenged evidence, no ruling is necessary. *Cf. Norse v. City of Santa Cruz*, 629 F.3d 966, 973 (9th Cir. 2010) (district court "must also rule on evidentiary objections that are material to its ruling").

Zinus challenges the Assembly Instructions as "unauthenticated, hearsay and inadmissible."[32] Zinus contends that the Assembly Instructions cannot be used to prove the structural detail of the bed depicted in the Inspection Report; *i.e.*, the bed sold to Jusama/Lawrie in 2012.[33] Zinus proffers that the Assembly Instructions were attached to a different Purchase Order number than the one associated with the Inspection Report bed and that the photos depicting assembly instructions in the Inspection Report show a different set of instructions.[34] In view of those alleged infirmities, Zinus contends that it would be improper for the Court to use the Assembly Instructions to determine "what

---

[31]     *See* Zinus's Evid. Obj. to Cap Export's Statement of Uncontroverted Facts [ECF No. 363-2].

[32]     Zinus Opposition at 5:15-16.

[33]     *Id.* at 5:16-19.

[34]     *Id.* at 6:7-16.

the detail of the longitudinal bar-to-footboard attachment may have been in the bed of the photograph of the Inspection Report."[35]

Cap Export responds that the Declaration of Yuxian Xie, a then-employee of XXITC, authenticates the Assembly Instructions, *i.e.*, the "Fusion Bed In Box installation instructions," and that the declaration provides pictures of the same instructions alongside the corresponding bed-in-a-box.[36]

In its tentative ruling, which the Court provided to the parties before the hearing, the Court credited-in-part Zinus's argument that the Assembly Instructions should not be considered with respect to the Mersin bed purchased by Jusama/Lawrie. Based upon the Xie Declaration, however, the Court was inclined to consider the Assembly Instructions with respect to whether the XXITC-manufactured "Fusion" bed was invalidating. At the hearing and through subsequent briefing, the parties have raised additional, relevant arguments concerning, *inter alia*, whether the Mersin bed and Fusion bed are the same and whether the Xie Declaration is admissible. With the benefit of the parties' additional arguments and briefing, after considering the full summary judgment record, to simplify the issues for any appeal, the Court concludes that the proper course of action is to analyze invalidity based upon the Mersin bed sold to Jusama/Lawrie in 2012. Accordingly, the Court will resolve the related evidentiary objection by analyzing whether the Assembly Instructions are admissible concerning the Mersin bed purchased by Jusama/Lawrie in 2012.

As Zinus observes, the "physical structure" of the Mersin bed "is pictured in the 'Inspection Report' marked as Exhibit 560 to the 2019 deposition of Mr. Lawrie."[37] The Inspection Report relates to invoice number

---

[35] *Id.* at 7:26-8:2.

[36] Cap Export Reply at 16:1-3 (citing Decl. of Yuxian Xie In Supp. of Cap's MSJ (the "Xie Declaration") [ECF No. 325-3] at Ex. 4, p. 33).

[37] Zinus Suppl. Br. at 2 (citing 2019 Lawrie Deposition, Ex. 560, *available at* ECF No. 276 at p. 329).

"WM011190," which corresponds to Jusama/Lawrie's 2012 purchase of the Mersin bed-in-a-box; this relationship is confirmed by Agnes Tan, the marketing director of Woody, and by Colin Lawrie, the then-president of Zinus.[38] Notably, unlike the Xie Declaration to which Zinus has mounted various challenges, Zinus does ***not*** challenge Agnes Tan's credibility, her ability to authenticate Woody-related exhibits, or the statements and testimony contained in her declaration and deposition testimony.

Tan authenticates (and Lawrie does not dispute) the February 9, 2012, invoice sent "Attn: Mr. Colin Lawrie" and signed by Lawrie,[39] for 405 units of the Mersin bed-in-a-box.[40] The invoice describes the bed frames as "metal," including a "metal rail."[41] According to email correspondence related to the invoice, this was a "repeat order" of the platform beds, and Tan provides the referenced earlier invoice as well.[42] Further, Tan explained at her deposition that, in connection with preparing the 2012 Jusama/Lawrie Mersin bed shipment, the Inspection Report includes various quality control-related photos of a Mersin bed and its packaged contents, shown in various stages of assembly. Example images include the following:[43]

---

[38] *See, e.g.*, Decl. of Agnes Tan (the "Tan Declaration") [ECF No. 249-6], at ¶ 3 (Colin Lawrie signed invoice number WMO11190, dated February 9, 2012, which was an invoice for "a bed with all components fitting inside the headboard"); Decl. of Andre Boniadi in Supp. of Cap Export's Motion for Summary Judgment [ECF No. 325-2], Ex. B (the "2019 Tan Deposition") at 15:15-16:24 (authenticating the invoice); 2019 Lawrie Deposition at 117:22-119:1 (confirming that Lawrie's signature appears on the invoice) & 179:3-20 (confirming that the Inspection Report matches the invoice number).

[39] Tan Declaration, Ex. A.

[40] *Id.* at ¶¶ 2 & 3.

[41] *See id.*, Ex. A.

[42] *See* Lawrie 2019 Deposition, Ex. 554, p. 299 of 341; *see also id.*, Ex. 555, (2011 invoice), p. 306 of 341.

[43] *See* Lawrie 2019 Deposition, Ex. 560 at 1; *see also* 2019 Tan Deposition at 23:3-26:24 (Tan explaining that the Inspection Report corresponds to Lawrie's 2012 Mersin bed order, invoice WMO11190).




Several photos depict how the Mersin bed was shipped, including images of individual components and ancillary materials such as a set of assembly instructions, as depicted below:[44]




---

[44] *See id.* at 2.



Zinus argues that the 2011 Assembly Instructions cannot be used to analyze the structure of the 2012 Mersin bed because the Assembly Instructions relate to the Fusion bed. But as depicted above, although the images are somewhat blurry, they are clear enough to read that the assembly instructions contained in the 2012 Mersin Inspection Report state "Model Name: Fusion PU Bed In Box" (bottom right image above).[45] Agnes Tan explains that, although different model names might be given to the bed-in-a-box (*e.g.*, Jusama bought "Mersin" beds as opposed to "Fusion" beds), the "PCOO1" factory code demonstrates that they are the same bed-in-a-box product.[46] Similarly, Zinus agrees that "it is not uncommon for assembly instructions for one version

---

[45]     *See id.*

[46]     *See* 2019 Tan Deposition at 17:8-20:21.

of a bed model to be put into the shipping boxes for another version of the bed model."[47]

Because the 2012 Mersin-related Inspection Report shows that the Mersin beds were shipped with Fusion assembly instructions, the Court finds the clear images contained in the disputed 2011 Assembly Instructions relevant in two ways. First, to the extent that the pages are the same, the clear images and text of the Assembly Instructions can be used to help confirm the blurry images in the Inspection Report. Conversely, where the clear images contain noticeable differences (*e.g.*, the 2012 Inspection Report page depicting a grid of individual component parts adds a twelfth component that appears to be some type of plastic cap), the Assembly Instructions cannot be used to discern different blurry images.

Second, the parties' invalidity dispute turns on how the longitudinal bar (*i.e.*, the "centre support rail" in the instructions) connects to the headboard and footboard. Cap Export argues that the bar attaches to the headboard and footboard, as claimed in the '123 Patent. In contrast, Zinus argues that the end of the bar is inserted into a hole in the footboard, and, thus, it does not contain every element of Claim 1. Therefore, the Assembly Instructions images are useful only to clarify how the longitudinal bar connects to the headboard and footboard if that connection was the same in 2011 and 2012.

To be sure, the record reflects that the Assembly Instructions relate to Zinus/Lawrie's **2011** Mersin bed order. But because Cap Export's invalidity arguments focus on the Inspection Report—which relates to Jusama/Lawrie's **2012** Mersin bed order—and construing the record in the light most favorable to

---

[47] *See* Zinus Opp. at 7:13-15 (citing Decl. of Cindy Hunting (the "Hunting Declaration") [ECF No. 363-5] at ¶ 27). Lawrie also agreed that the Fusion Assembly Instructions were related to the Mersin bed. *See, e.g.*, Lawrie 2019 Deposition at 156-57, 159, & 180-81.

the non-moving party, the Court will focus on the 2012 order.[48]  This 2011/2012 difference notwithstanding, a side-by-side comparison demonstrates that the relevant portions of the instructions concerning the connection are the same.

| 2011 Assembly Instructions<br>WMO10050 | 2012 images of assembly instructions<br>WMO11190 |
| --- | --- |
| STEPS:–– <br><br>1) Fix the legs(5) to headboard(1) and footboard(2) using bolts(B) as shown.    Tighten the bolts using allen key(H).<br><br>2) Attach side rail support legs(6) to side rails(3) using bolts(B) as shown. Tighten the bolts using allen key(H).<br><br>3) Fix the side rails(3) to headboard(1) and footboard(2) using bolts(A), spring washer(F) and flat washer(E) as shown . Tighten the bolts using allen key(G).<br><br>4) Attach horizontal support rail(8) to side rails(3) using bolts(B) as shown.    Tighten the bolts using allen key(H).<br><br>5) Attach "T" centre support legs(10) to centre support rails(4) using bolts(B)  and "T" nuts(D) as  shown.  Tighten the bolts using allen key(H).<br><br>6) Attach the centre support rails (4) to headboard(1) and footboard(2) as shown.<br><br>7) Place "U" bracket(I) in the mid of horizontal rail(8) ,slot in the centre support rails (4) to "U" bracket ,and attach by using bolts(C) and "T" nuts(D) as shown.<br>Fix  the centre support  legs(7) to horizontal support rail(8) using bolts (C) as shown . Tighten all bolts using allen key(H).<br><br>8) Attach the bent salts(9) to plastic slat cap (11). slot in the bent slats(9) to side rails(3) pre-hole and then attach bent slats(9) with plastic slat cap(11) to centre support rails(4) as shown. | |

48  *Compare* 2019 Lawrie Deposition, Ex. 557 (September 14, 2011, email chain copying Tan regarding "PC001–WMO10050" order and attaching the Assembly Instructions) *and id.* at Ex. 555 (February 17, 2011, email chain concerning Jusama/Lawrie's 2011 WMO10050 order for Mersin beds) *with* n.38, *supra* (concerning Jusama/Lawrie's 2012 WMO11190 order for Mersin beds).



Based upon the foregoing analysis, the Court **OVERRULES** Zinus's objections to the Assembly Instructions and considers them relevant in the two ways summarized above. Because the Court declines to rely on the Xie Declaration, the Court need not resolve Zinus's objections to Xie as a witness or to the documents attached to Xie's declaration.

Next, the Court turns to Cap Export's Requests for Judicial Notice. The Court **GRANTS** Cap Export's First Request for Judicial Notice,[49] which contains documents proper for notice under Rule 201 of the Federal Rules of Evidence, and to which Zinus did not respond or object. The Court **DENIES as**

---

[49] *See* Req. for Judicial Notice in Support of Cap Export's MSJ ("Cap Export's Request for Judicial Notice") [ECF No. 325-4], attaching a prior Order and prior declarations and exhibits submitted by Zinus in this case.

**moot** Cap Export's Second Request for Judicial Notice,[50] because the Court finds it unnecessary to rely on the proposed material to resolve the pending Motions.

### c. On-Sale Bar

A patent is invalid if the "the claimed invention was patented, described in a printed publication, or in public use, on sale, or otherwise available to the public [more than one year] before the effective filing date of the claimed invention." 35 U.S.C. § 102(a)-(b). "Whether the on-sale bar applies is a question of law based on underlying factual findings." *Medicines Co. v. Hospira, Inc.*, 827 F.3d 1363, 1371 (Fed. Cir. 2016). The Federal Circuit observed that the Supreme Court has "clarified that the on-sale bar under 35 U.S.C. § 102(b) applies when, before the critical date, the claimed invention (1) was the subject of a commercial offer for sale; and (2) was ready for patenting." *Id.* at 1372 (citing *Pfaff v. Wells Elecs., Inc.*, 525 U.S. 55, 67-68 (1998)). The first prong should "'be analyzed under the law of contracts as generally understood.'" *Id.* at 1373 (quoting *Group One, Ltd. v. Hallmark Cards, Inc.*, 254 F.3d 1041, 1047 (Fed. Cir. 2001)). The second prong should be analyzed with reference to whether the challenger can show "(1) proof of a reduction to practice; or (2) drawings or other descriptions sufficiently specific to enable a person of ordinary skill to practice the invention." *Id.* at 1373.

Cap Export argues that the '123 Patent is invalid under the on-sale bar by relying on the bed-in-a-box products offered for sale and sold to Jusama/Lawrie in Canada more than one year before the patent filing date. Zinus counters that it is unclear from the Woody invoices and related documents whether any Woody beds had elements corresponding to all of the claim limitations of the

---

[50] *See* Req. for Judicial Notice in Supp. of Cap Export's MSJ ("Cap Export's Second Request for Judicial Notice") [ECF No. 376-1], attaching a website printout processed through the Wayback Machine.

'123 Patent.  Zinus also questions whether Lawrie's purchases from Woody constitute commercial sales at a commercial price and whether displaying a product at a trade show qualifies as public use.

Offering a product for sale at a trade show is typically sufficient to raise the on-sale bar.  *See Pride Family Brands, Inc. v. Carl's Patio, Inc.*, 992 F. Supp. 2d 1214, 1218 (S.D. Fla. 2014) (distributing furniture catalog depicting relevant chair to potential customers at an industry trade show more than one year before patent application invalidated invention).  In this instance, however, Cap Export's evidence concerning trade shows is insufficient to raise the on-sale bar.  Lawrie provided some testimony concerning attending trade shows, but it is too vague for the Court to determine whether the beds that he may have viewed at trade shows were the same as the invention claimed in the '123 Patent.[51]

Conversely, the evidence concerning ***actual*** sales of bed-in-a-box products is sufficient to raise the on-sale bar if those beds contain all of the claim elements of the '123 Patent.  That is, if those beds render the patent invalid for anticipation (as discussed in the next section), then the fact that they were reduced to practice and openly sold to multiple customers would simultaneously raise the on-sale bar.

Cap Export proffers evidence that the bed-in-a-box products were reduced to practice and commercially sold since 2010.  For example, as discussed above, Agnes Tan confirms that, in 2012, Woody sold to Jusama/Lawrie "a bed with all components fitting in the headboard, including the footboard and the longitudinal bar, for shipping."[52]  Tan explains that this purchase involved a "bed in a box," which "means that all the parts, [are] put into the headboard at the back, and then we zip it up and, you know, [it]

---

[51]     *See* Lawrie 2019 Deposition at 70:8-73:11.
[52]     *See* Tan Decl. at ¶¶ 2-4.

become[s] one piece packed in a box."[53]  Tan's sworn statements and the
supporting documentary evidence that she provides are sufficient to establish
clear and convincing evidence of commercial sales.  *See Eisenberg v. Alimed, Inc.*,
243 F.3d 555 (Fed. Cir. 2000) (accepting as clear and convincing evidence
testimony from "a nonparty testifying about an unpatented invention" made
before the relevant date).

As discussed, Zinus does not challenge Tan's personal knowledge or
credibility, or the authenticity of the invoices that Tan attests were "kept in the
ordinary course of Woody Furniture Manufacturing's business."[54]  Instead,
although Lawrie claims no independent recollection of these orders or the
existence of the beds—a representation that this Court and the Federal Circuit
have already rejected—Lawrie admits that the invoice bears his signature and
that he has no evidence to contradict the invoice.[55]  Thus, if any of the
commercially sold beds are the same as the bed disclosed in the patent, then Cap
Export has presented clear and convincing evidence to invoke the on-sale bar.

The Court finds unpersuasive Zinus's other arguments attempting to
discredit Cap Export's on-sale bar defense.  Zinus provides no authority for the
proposition that a low number of sales, low quality, unprofitable sales, or
government subsidies necessarily affect the otherwise commercial nature of the
undisputed bed sales identified by Tan.  The Court is aware of no "loss" or
"low quantity/quality" exceptions for commercial sales.  *See, e.g.*, *Application of
Dybel*, 524 F.2d 1393, 1401 (C.C.P.A. 1975) ("Although selling the devices for a
profit would have demonstrated the purpose of commercial exploitation, the fact

---

[53]     2019 Tan Deposition at 17:15-20.  During her deposition, Tan testified
that Woody had been selling a bed-in-a-box product since 2010, and she
provided details regarding Jusama/Lawrie's other two bed-in-a-box orders from
Woody in 2011 and 2013.  *See, e.g.*, *id.* at 38:21-39:2.  As discussed above,
however, for the purposes of this Motion, the Court focuses on the 2012 order.

[54]     Tan Declaration at ¶ 5.

[55]     *See* 2019 Lawrie Deposition at 84:15-23, 118:2-15, & 189:4-20.

that appellant realized no profit from the sales does not demonstrate the contrary."); *see also Atl. Thermoplastics Co. v. Faytex Corp.*, 970 F.2d 834, 836 (Fed. Cir. 1992) ("A single sale or offer to sell suffices to bar patentability."). Relatedly, offering beds for sale constitutes "public use." *See Dzinesquare, Inc. v. Armano Luxury Alloys, Inc.*, No. CV 14-01918-JVS-(JCGx), 2014 WL 12597154, at *6 (C.D. Cal. Dec. 22, 2014) (website postings and catalogs are publicly accessible).

### d. <u>Anticipation</u>

"A patent is invalid for anticipation if a single prior art reference discloses each and every limitation of the claimed invention." *Schering Corp. v. Geneva Pharm. Inc.*, 339 F.3d 1373, 1377 (Fed. Cir. 2003) (internal citation omitted). "[I]t is axiomatic that that which would literally infringe if later anticipates if earlier." *See Bristol-Myers Squibb Co. v. Ben Venue Labs., Inc.*, 246 F.3d 1368, 1378 (Fed. Cir. 2001). Anticipation under 35 U.S.C. § 102 is a question of fact, but it may be resolved on summary judgment if no genuine dispute of material fact exists. *See OSRAM Sylvania Inc. v. Am. Induction Techs. Inc.*, 701 F.3d 698, 704 (Fed. Cir. 2012). Moreover, "[s]ummary judgment is proper if no reasonable jury could find that the patent is not anticipated." *Id.* (citing *Zenith Elecs. Corp. v. PDI Commc'n Sys. Inc.*, 522 F.3d 1348, 1356–57 (Fed. Cir. 2008)). "In deciding the issue of anticipation, the trier of fact must identify the elements of the claims, determine their meaning in light of the specification and prosecution history, and identify corresponding elements disclosed in the allegedly anticipating reference." *Lindemann Maschinenfabrik GMBH v. Am. Hoist and Derrick Co.*, 730 F.2d 1452, 1458 (Fed. Cir. 1984).

To show anticipation, Cap Export relies on the "Woody bed-in-a-box Lawrie had been purchasing three years before the patent application filing

date."[56] In its claim analysis chart, Cap Export provides photographs from the Inspection Report and images from the Assembly Instructions.[57] Zinus first argues that Cap Export did not carry its burden, and, thus, Zinus need not respond. Zinus also counters that there is no singular "Woody bed-in-a-box" product to analyze, and, in any event, the pictures of the Inspection Report bed show that it lacks a "first connector" and "second connector" on the longitudinal bar, a "third connector" on the headboard, and a "fourth connecter" on the footboard. Finally, Zinus maintains that the alleged prior-art Inspection Report bed has no element corresponding to the limitation that "the second connector is directly connected to the fourth connector in an assembled state of the mattress support."[58]

As Zinus suggests, the Court will focus its anticipation analysis on the 2012 Mersin bed shown in the Inspection Report. The Court begins by identifying the disputed claim elements as the relevant points of inquiry for its anticipation analysis (the elements underlined in the table below). Next, the Court construes those elements. Finally, the Court considers whether those elements are present in the 2012 Mersin bed-in-a-box.[59] *See Lindemann*, 730 F.2d at 1458.

The Court previously addressed claim construction issues and concluded that plain and ordinary meaning applies.[60] In view of the non-technical nature of

---

[56] Cap Export MSJ at 11:11-13.

[57] *See id.* at 8-11 (relying on Lawrie 2019 Deposition Exs. 557 & 560).

[58] *See* Zinus Opposition at 20:2-21:7.

[59] Zinus had the opportunity to challenge the evidence concerning any other claim limitations. Thus, the Court deems Zinus's silence as consent to granting the Motion with respect to those unchallenged claim limitations. *See* L.R. 7-12. Even absent the application of this Local Rule, Lawrie's apparent concession that the beds are the same also weighs against allowing Zinus belatedly to challenge additional claim elements. *See, e.g.*, Lawrie 2019 Depo. at 183:16-25, 187:11-189:20.

[60] *See, e.g.*, In Chambers Order [ECF No. 154] at 15 ("Here, all of the words in Claims 1-3 are common English words, and none of the words carries any

-24-

the invention, the straightforward claim language, and the clear specification, the Court declines to disturb this conclusion. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (claim terms "are generally given their ordinary and customary meaning").

---

**Disputed Claim Limitations**

a longitudinal bar with [1] <u>a first connector</u> and [2] <u>a second connector</u>; a headboard with a compartment and [3] <u>a third connector</u>; and a footboard with [4] <u>a fourth connector</u>, wherein . . . [5] <u>the second connector is directly connected to the fourth connector in an assembled state of the mattress support</u>

---

When read in light of the specification, the disputed limitations are easily understood. The specification teaches that "[t]he first connector on the longitudinal bar is adapted to attach to a third connector on the outside of the headboard. And the second connector on the longitudinal bar is adapted to attach to a fourth connector on the footboard."[61] In other words, one end of the longitudinal bar "includes a first connector **28**" that connects the longitudinal bar to the headboard, while the other end of the longitudinal bar includes "a second connector **29**" that connects it to the footboard.[62]

In one embodiment depicted in the specification, the third connector **43**, to which the first connector attaches, "is formed by two bolts with large flat

---

special meaning or suffers from any ambiguity. Thus, no extrinsic evidence is necessary and the terms used in Claims 1-3 are given their customary meaning."); In Chambers Order Granting Plaintiff's Motion for Summary Judgment [ECF No. 70] ("In essence, this claim [*i.e.*, Claim 1] describes a bed frame that can be taken apart.").

[61] '123 Patent at 2:13-16.

[62] *Id.* at 4:24-27.

heads.  Alternatively, regular bolts with washers can be used."[63]  Similarly, in this embodiment, the fourth connector **44**, to which the second connector attaches, "is formed by two bolts with washers over which slots in [the second] connector **29** slide."[64]

To illustrate these structural relationships, Figure 5 shows the first connector **28** and third connector **43** (*i.e.*, the bolts) connecting the headboard to the longitudinal bar, along with a detailed depiction of the second connector **29** on the longitudinal bar that connects with the footboard bolts (*i.e.*, the fourth connector):



Figure 7 further illustrates the footboard connection, depicting the "slot in [the second] connector **29** [that] has not yet slid down over bolt **44** [the fourth connector]":[65]

---

[63]      *Id.* at 4:48-49
[64]      *Id.* at 4:65-67.
[65]      *Id.* at 4:67-5:1; *see also id.* at Fig. 7.



Several pieces of evidence support the conclusion that the 2012 Mersin bed contained all of the disputed elements later claimed in the '123 Patent. First, Agnes Tan, who has worked at Woody since 1997 and has been its marketing director since at least 2011, testifies that the Mersin bed purchased by Jusama/Lawrie included a longitudinal bar that fit inside the headboard for shipping.[66] Second, the Inspection Report relating to the 2012 Mersin bed shipment shows that the disputed claim elements were present in this prior art bed. Using the nearly identical 2011 Mersin Assembly Instructions—which were attached to an email chain including Tan and were shown to Lawrie as Exhibit 557 during his 2019 deposition—to confirm the blurry images, the instructions packed with the 2012 Mersin bed explain how to connect the longitudinal bar (aka "centre support rail") to the headboard and footboard, both verbally and pictorially. Both sets of instructions, one blurry and one clear,

---

[66]     Tan Decl. at ¶ 3.

describe the connection between the longitudinal bar and headboard and footboard as follows.[67]



6)Attach the centre support rails (4) to headboard(1) and footboard(2) as shown.

Similarly, another photo in the Inspection Report shows the assembled connection.[68]



Disregarding the Assembly Instructions, Zinus argues that this photo "proves that the Mersin bed does not have either the recited 'second connector'

---

[67]     *See* Lawrie 2019 Deposition, Ex. 557 at p. 2 of instructions, *available at* ECF No. 276 at p. 318 of 341.

[68]     *See id.* at 3.

or 'fourth connector' of asserted claims 1-3."[69]  In support, Zinus relies on the declaration of its Rule 30(b)(6) witness, Cyndi Hunting.  Hunting testifies,

> it is not possible to tell from the Inspection Report alone exactly how the center support rail of the frame might have engaged the headboard and what kind of connector, if any, may have been used in that location.  It is possible that there was no connector.  In making this statement and determination, I am assuming that all the photographs of beds in the Inspection Report are photographs of the same single physical bed.[70]

Hunting continues,

> I do not believe that any person could honestly look at the photographs of the Inspection Report and say that she or he sees a connector on the end of any center support rail that is connecting that bar to any headboard.  None of the photographs is adequate to make that determination.[71]

After concluding that the Inspection Report is inconclusive, Hunting opines that

> [i]n my educated opinion, the photograph replicated above most likely shows a rectangular hole of some sort.  That hole appears to extend from the inside fabric surface of the footboard into the footboard for a distance of about an inch.  Although the end of the hole appears to be white in the photograph, I conclude that the hole does not extend all the way through to the other side of the footboard because such a design would be ugly and would lack customer appeal.[72]

---

[69]  Zinus Suppl. Br. at 3:2-4.
[70]  Hunting Declaration at ¶ 18.
[71]  *Id.* at ¶ 19.
[72]  *Id.* at ¶ 22.

To support Hunting's statements, Zinus provides a declaration from another Zinus employee, Jayson Lee.[73] As Hunting did—ignoring the Assembly Instructions and referencing only the above photograph—Lee opines that "[n]o connector is visible on the end of the center support rail that is touching the footboard."[74]

The Court finds it telling that Hunting and Lee both decline to address the clear Assembly Instructions or the blurry assembly images in the Inspection Report, especially step 6, before opining on the ultimate issue of how the longitudinal bar connects to the headboard/footboard. Moreover, even setting aside the fact that Hunting reaches internally inconsistent conclusions (*i.e.*, she finds it not possible to tell what type of headboard/footboard-to-longitudinal-bar connection exists, but she has the ability to discern that it is likely a rectangular hole), the Assembly Instructions depicted in the Inspection Report speak for themselves. Speculation ***ignoring*** this evidence is insufficient to create a genuine dispute of material fact. It is well settled that conclusory or speculative statements in an affidavit are insufficient to create a material factual dispute. *See Phytelligence, Inc. v. Washington State Univ.*, 973 F.3d 1354, 1364 (Fed. Cir. 2020) (conclusory or speculative statements in an affidavit insufficient to create genuine dispute of material fact); *Phonometrics, Inc. v. Hosp. Int'l, Inc.*, 120 F. App'x 341, 345 (Fed. Cir. 2005) (non-moving party "must have something more than conjecture and speculation to create a disputed issue of material fact"). For the same reasons that Hunting's speculation cannot create a genuine dispute of material fact, neither can Lee's. *See Abbott Lab'ys v. TorPharm, Inc.*, 300 F.3d 1367, 1375 (Fed. Cir. 2002) (speculative statements by company officials cannot give rise to a genuine dispute of material fact).

---

[73]    *See* Decl. of Jayson Lee [ECF No. 363-6].

[74]    *Id.* at ¶ 9.

-30-

Zinus offers no alternative argument concerning the Assembly Instructions.  But as clearly depicted, Step 6 directs attaching the "centre support rails" (*i.e.*, the two-pieced longitudinal bar) to the headboard and footboard as shown below.[75]  In the pictorial directions, item **4** depicts the equivalent of the first connecter and second connecter on the longitudinal bar, and item **2** depicts the equivalent of the third connector on the headboard and the fourth connector on the footboard, with the adapted ends **4** able to slide down into the **2** connectors on the head and footboard, respectively.  As claimed in the patent, items **2** (footboard connector) and **4** (footboard-connecting-end of longitudinal bar) are directly connected when the bed is in an assembled state.  Thus, the disputed claim elements are present in the 2012 Mersin bed.



The fact that the embodiments described in the '123 Patent specification use slots sliding over bolts rather than tongues sliding into slots to form the required connections does not undermine this conclusion for two reasons.  First, nothing in the intrinsic evidence suggests that the claimed connectors are points of novelty for the bed frame such that the specific type of connector shown in the specification is required.  Indeed, this point is supported by the broad claim language, "connector."  Second, although the specification provides some examples of connectors, patent claims are read in light of the specification;

---

[75]    *See* Lawrie 2019 Deposition, Ex. 557 at p. 3 of instructions, *available at* ECF No. 276 at p. 319 of 341.

limitations from the specification (such as using bolts for the connectors) should not be imported into the claims. *See Abbott Labs. v. Sandoz, Inc.*, 566 F.3d 1282, 1288 (Fed. Cir. 2009). The '123 Patent notes expressly that its specification "does not purport to define the invention. The invention is defined by the claims. . . . The accompanying drawings, where like numerals indicate like components, illustrate [only] embodiments of the invention."[76]

Although Lawrie made repeated misrepresentations about this point, Zinus does not dispute that Jusama/Lawrie purchased the 2012 Mersin bed from Woody. Zinus also does not dispute the credibility of disinterested witness Tan. Rather, Zinus argues that it should not have to respond to Cap Export's anticipation argument; to the extent that it does respond, Zinus focuses narrowly on only some of the evidence before the Court. Because the 2012 Mersin bed contains all of the same elements as the bed subsequently claimed in the '123 Patent, the Court concludes that, based upon clear and convincing evidence, the '123 Patent is invalid for anticipation by the 2012 Mersin bed purchased by Jusama/Lawrie.

### e. **Obviousness**

Because the Court concludes that the '123 Patent is invalid for anticipation, the Court declines to analyze Cap Export's obviousness arguments under 35 U.S.C. § 103(a).

## C. **Non-Infringement**

Cap Export seeks a declaration of non-infringement; Zinus opposes.[77] Because the Court finds all three asserted claims of the '123 Patent invalid for anticipation, the question of infringement is now moot. *See Lough v. Brunswick Corp.*, 86 F.3d 1113, 1123 (Fed. Cir. 1996) ("Invalidity is a complete defense to

---

[76]    '123 Patent at 2:20-22 & 2:26-27.

[77]    Cap Export MSJ at 24:18-23; Zinus Opposition at 26:23-28:6.

infringement and . . . [n]o further public interest is served by [the Court] resolving an infringement question after a determination that the patent is invalid."). Therefore, the Court declines to reconsider infringement. As a practical matter, the Court notes that its earlier infringement ruling is undermined by its current invalidity ruling, which is based upon a more complete evidentiary record and is dispositive. In any event, in light of the Court's instant invalidity ruling, any infringement would not give rise to liability. *See Pandrol USA, LP v. Airboss Ry. Prod., Inc.*, 320 F.3d 1354, 1365 (Fed. Cir. 2003) ("an invalid claim cannot give rise to liability for infringement").

**D.  Unenforceability Due to Inequitable Conduct**

Cap Export also seeks summary judgment on its affirmative defense of inequitable conduct based upon, *inter alia*, Oh's alleged knowledge of prior art bed-in-a-box products before he submitted an inventorship declaration to the PTO.[78] Relatedly, Zinus seeks partial summary judgment that Colin Lawrie committed **no** inequitable misconduct, allegedly because Lawrie was not substantively involved in the patent application.[79]

Because the Court concludes that the asserted claims are invalid, it need not reach Cap Export's affirmative defense of inequitable conduct, because doing so would not change the scope of the judgment. *See Freedman Seating Co. v. Am. Seating Co.*, 420 F.3d 1350, 1363 (Fed. Cir. 2005) (after dispositive ruling of no infringement, the Court "need not address the issue of enforceability" where it is asserted "not as a counterclaim for a declaratory judgment, but rather, as an affirmative defense" to the disposed-of claim because the affirmative defense "would have no effect on the scope of the judgment"); *Lacks Indus., Inc. v. McKechnie Vehicle Components USA, Inc.*, 322 F.3d 1335,

---

[78]  Cap Export MSJ at 20:4-18.

[79]  *See* Mem. of P. & A. in Supp. of Zinus's Mot. for Partial Summ. J. that Colin Lawrie did not Commit Inequitable Conduct [ECF No. 318-1].

1346 (Fed. Cir. 2003) (declining to "reach the validity issues pertaining to [the patents] because we have affirmed the trial court's grant of summary judgment of non-infringement and because invalidity was raised below merely as an affirmative defense to infringement"); *cf. Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83, 93-94 (1993) ("An unnecessary ruling on an affirmative defense is not the same as the necessary resolution of a counterclaim for a declaratory judgment."). Therefore, both Motions, as they relate to the affirmative defense of inequitable conduct, are **DENIED as moot**.

## IV. CONCLUSION

For the foregoing reasons, the Court hereby **ORDERS** as follows:

1. Cap Export's Motion for Summary Judgment is **GRANTED-IN-PART** and **DENIED-IN-PART**. Specifically, the Court **GRANTS** Cap Export's Motion with respect to invalidity and **DENIES** it **as moot** with respect to noninfringement and inequitable conduct.

2. Zinus's Motion for Partial Summary Judgment of no inequitable conduct is **DENIED as moot**.

3. The Court declines to exercise supplemental jurisdiction over Zinus's sole remaining claim for unfair business practices under Cal. Bus. & Prof. Code § 17200. Accordingly, that claim is **DISMISSED without prejudice**.

4. Counsel for the Cap Export and Abraham Amouyal and counsel for Zinus are **DIRECTED** to meet and confer telephonically (or by Zoom or other virtual platform) on or before June 9, 2021, regarding a form of Judgment resolving this case.

5. On or before June 16, 2021, the parties are **DIRECTED** to file a Joint Status Report that includes a draft Judgment resolving this case. If the parties cannot agree on the form of that draft Judgment, then their Joint Status

Report shall include a brief description of their points of disagreement and each party's short justification for its respective position.

**IT IS SO ORDERED.**

Dated:  June 2, 2021

John W. Holcomb
UNITED STATES DISTRICT JUDGE